## Case No. 15,737.

### UNITED STATES v. MASON et al.

#### [2 Bond, 183.] [1]

Circuit Court, S. D. Ohio.  Oct. Term, 1868.

POST-OFFICE — POSTAGE STAMPS — DEPUTY POSTMASTER—SURETIES ON BOND.

1. Section 3 of the act of congress of March 3, 1851 [9 Stat. 589], authorizes the postmaster-general to deliver postage stamps to a deputy postmaster without prepayment.

2. The intention of congress by said section was to require prepayment for postage stamps of persons not deputy postmasters.

3. Under the said act, the sureties upon the official bond of a deputy postmaster are liable for postage stamps received by their principal.

4. The sureties upon the bond of a deputy postmaster, which stipulates that the principal shall faithfully account for postage stamps received by him, are liable as upon a valid contract at common law.

At law.

Durbin Ward, U. S. Dist. Atty.
H. H. Hunter, for defendant.

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

OPINION OF THE COURT. This is an action of debt against Columbus B. Mason, on his bond as a deputy postmaster at Circleville, Ohio, and against the other defendants, as the sureties of Mason. The declaration sets out at length the conditions of the bond, one of which is that the said Mason, as a deputy postmaster, "shall faithfully account with the United States, in the manner directed by the postmaster-general, for all moneys, postage stamps, stamped envelopes, bills, bonds, notes, drafts, receipts, vouchers, and other property and papers, which he, as postmaster, or as agent and depositary as aforesaid, shall receive for the use and benefit of the said post-office department." Various breaches of the bond are assigned; and, among others, it is averred that Mason and his sureties did not account for all the postage stamps, envelopes, etc., received by Mason from time to time, as deputy postmaster. For the purpose of a decision of the question now before the court, it is not necessary to notice the other breaches assigned. The sureties have filed several special pleas, setting up matters of defense to the action on the bond. Among others, there is an eighth plea, which is, in substance, that Mason, as deputy postmaster, faithfully accounted for and paid over all moneys for which he was accountable, and which is claimed as due from him, "except such part thereof as may have arisen as proceeds of sales of postage stamps and stamped envelopes, if any such were placed in his hands, or furnished to him by the postmaster-general;" as to which they aver that the plaintiff is not entitled to recover against them as sureties, "because they say the said Columbus B. Mason, in his said capacity of deputy postmaster, or otherwise, was not an assistant treasurer, or a designated depositary of the United States, and that it was not lawfully competent for the postmaster-general, or any other officer or agent of the plaintiff, to furnish to him, the said Columbus B. Mason, in his said capacity of deputy postmaster or otherwise, postage stamps or stamped envelopes, except upon payment thereof in advance."

To this plea there is a general demurrer, and upon that the question before the court arises. It presents the single inquiry, whether the sureties in the bond of an assistant postmaster are liable for postage stamps delivered by the postmaster-general to such assistant, for which he has failed to account. It is insisted, by the counsel for the sureties, that the postmaster-general had no authority, under any law of the United States, to deliver postage stamps or stamped envelopes to a deputy postmaster but upon prepayment for them, and that the sureties are not responsible for a failure by the assistant postmaster to account for them in his settlement with the post-office department. The decision of the question depends

on the construction to be given to a part of section 3 of the act of March 3, 1851 (9 Stat. 589), which was in force when the bond was executed. The first clause of that section provides, "that it shall be the duty of the postmaster-general to provide and furnish to all deputy postmasters, and to all other persons applying and paying therefor, suitable postage stamps, of the denomination of three cents, and of such other denominations as he may think expedient, to facilitate the prepayment of postages provided in this act." Thus the issue is presented, whether the sureties are liable for postage stamps delivered to a deputy postmaster, or to any other person, without prepayment on delivery; and whether the postmaster-general is authorized to deliver them to a deputy, except on such prepayment. And it is insisted, that as the stamps delivered to Mason, the deputy postmaster, were not thus paid for, but charged in his account at the post-office department, the sureties are not liable for any balance appearing to be due from him, accruing from his failure to pay or account for such stamps. It may be noticed, in the first place, that the bond given by the deputy postmaster, and executed by his sureties, provides that Mason, as deputy postmaster, "shall faithfully account with the United States, in the manner directed by the postmaster-general, for all moneys, postage stamps, * * * which he, as postmaster, or as agent and depositary, shall receive for the use and benefit of said post-office department." Such was the express undertaking of the parties to the bond, as prepared and furnished by the postmaster-general. That officer construed the section of the law referred to as authorizing him to deliver stamps to a deputy postmaster without requiring prepayment. He has, therefore, made special provision in the bond for the liability of the deputy to account for such stamps; and the sureties, by the express condition of the bond, undertake that he shall so account.

It seems to the court to be the plain construction of the section of the act of 1851 referred to, that the postmaster-general was authorized to deliver stamps to a deputy postmaster without prepayment, and that the requirement to prepay has reference to persons not deputy postmasters, who may apply for stamps. This is the grammatical construction of the words of the section; and there are strong reasons for the conclusion that such was the intention of congress. The provision referred to evidently presupposes that under the security afforded by the official bond of a deputy postmaster, he may be intrusted with stamps at the discretion of the postmaster-general without requiring payment upon delivery. But as to others, not officially connected with the post-office department, and who, for their interest or convenience, apply for stamps, they

should be required to pay for them on delivery. It would be inconvenient and unsafe for the government to give credit to and open accounts with every individual to whom stamps were delivered; but this objection does not apply to those delivered to deputy postmasters, acting under the obligation of an official oath and an official bond, and with whom accounts were necessarily opened by the post-office department.

This view is fortified by reference to section 11 of the act of March 3, 1847 (9 Stat. 201). It authorized the postmaster-general to prepare stamps to be attached to letters in prepayment of postage, and provided as follows: "Which said stamps the postmaster-general may deliver to any deputy postmaster who may apply for the same, the deputy postmaster paying or becoming accountable for the amount of the stamps so received by him." Under this provision, no stamps could be delivered to any other person than a deputy postmaster, who might pay for the same, or give security for the payment therefor, as prescribed by the postmaster-general. It was doubtless found, as the operations of the department were enlarged, that it would be promotive of the public convenience, and increase the efficiency of the department, that persons not postmasters should be authorized, at the discretion of the postmaster-general, to receive stamps, but only on the condition of prepayment; and that as to postmasters, they should be relieved from any obligation to pay as delivered, and that stamps received by them should be charged in their account current. That this was the reason of the change in the law, as made by the act of 1851, seems most obvious. The court has, therefore, no hesitancy in holding, that under the last-named act the sureties of Mason are liable, as well for postage stamps received by him as for moneys received for postages. I am unable to perceive that there is any hardship on the sureties from this construction of the statute, as they expressly agreed in the bond to be liable for postage stamps received by their principal. But if this construction of the statute is erroneous, are not the parties to this bond liable upon it as an instrument at common law? They agree by the terms of the bond that the postmaster shall faithfully account for postage stamps received by him. Is it not an agreement or stipulation that may be enforced by the government irrespective of the statute? I am not aware that this precise point has been adjudicated by the supreme court. Yet it seems clear, that by analogy to the principle decided by the supreme court in the case of U. S. v. Linn, 15 Pet. [40 U. S.] 290, the doctrine indicated may be sustained. That was a suit against Linn and the sureties in his bond as a receiver of public moneys in Illinois, alleging a defalcation in not ac-

counting for moneys received by him as such. The sureties, among other matters of defense, filed a plea of non est factum. It was based on the fact that no seals were affixed to the signatures of the sureties to the bond when executed by them. It was insisted by the counsel for the sureties, that the bond, not being executed according to the requirement of the act of congress, was a nullity as to them. The statute required receivers of public moneys to give bond for the faithful discharge of their duties, with approved security. The question as to the validity of the bond was elaborately argued in the supreme court. It was admitted in the case, that as to the sureties, the bond being signed without their seals, was not technically a bond according to the common law definition of that instrument; and it was insisted, that not being a bond, as required by the statute, it did not bind the sureties. But the court held, that although the bond was not strictly a bond without the seals of the parties to it, and not therefore within the letter of the statute, yet as the statute did not declare a bond not executed in strict pursuance of the statute to be void, it created a legal obligation on the part of the sureties. The court very distinctly held, that though the statute required a bond with approved security, "a mortgage, or any other approved security, voluntarily given, would, no doubt, be valid, and it would be no very forced interpretation of this act to consider the instrument as such security." Without quoting further from the opinion of the court, the point under consideration is briefly stated in the syllabus of the report, as follows: "If the contract signed by the defendants was entered into for a lawful purpose, not prohibited by law, and is founded on a sufficient consideration, it is a valid contract at common law." And the court remark, in their opinion: "There ought to be some very strong grounds to authorize a court to declare a contract absolutely void, which has been voluntarily made, upon a good consideration, and delivered to the party for whose benefit it was intended." The court can perceive no reason why the bond of the postmaster Mason, signed by his sureties, is not valid as to all the parties, within the doctrine settled by the supreme court in the case referred to  The sureties voluntarily undertook, by the very terms of the bond, that their principal should faithfully account for postage stamps received by him. Upon the theory that the statute did not authorize, in terms, the delivery of postage stamps to a deputy postmaster without prepayment, yet as this bond, stipulating for the liability of the sureties, was founded upon ·a good consideration, was executed in good faith, and was not prohibited by law, it is within the scope of the decision of the supreme court a valid bond. And the demurrer to the eighth plea must be sustained.