Fidelity & Guaranty Co. v. Rainey.

UNITED STATES FIDELITY & GUARANTY COMPANY *v.*
WALTER S. RAINEY *et al.*

(*Nashville.*   December Term, 1907.)

1. **GENERAL CREDITOR'S SUIT.** Claim may be presented
any time before final distribution of fund.

In a general creditor's suit, any owner of a claim is entitled to
present it, and share in the fund at any time before it has been
finally distributed, and even at a subsequent term, after a final
decree has been rendered settling all controverted questions, and
while the case is still in court awaiting realization of assets
and distribution of the fund. (*Post, pp.* 370, 371.)

Cases cited and approved:   Akers v. West, 1 Bax., 21; Hurley
v. Murrell, 2 Tenn. Chy., 620; Latta v. Summerow, 4 Lea, 486;
Hearn v. Roberts, 9 Lea, 368; Prewett v. Goodlett, 98 Tenn., 97;
In re Howard, 9 Wall., 175; Johnson v. Waters, 111 U. S., 674;
Olcott v. Headrick, 141 U. S., 548.

2. **SAME.** Same.  Adjudicated questions can not be opened at a
subsequent term at instance of petitioning creditor.

The rule allowing a creditor to present his claim and participate
in the assets in a general creditor's suit at any time before a
final distribution of the assets does not authorize such a creditor
to come in at a subsequent term, after a decree has been pro-
nounced settling all the controverted questions, for the purpose
of reopening the case, and having all of said questions reheard
and reviewed. (*Post, pp.* 374, 375.)

Cases cited and approved:   Allen v. Shanks, 90 Tenn., 359; Forbes
v. Railroad, Fed. Cas. No. 4926, 2 Woods, 334.

3. **BILLS OF EXCEPTIONS.** Necessary to make disallowed
petitions in chancery suits a part of the record.

In order to make a petition, the filing of which has been disal-
lowed in the lower court, a part of the record on appeal, it
must be embodied in the transcript by a bill of exceptions duly
signed and authenticated by the chancellor. (*Post, pp.* 373,
374.)

Fidelity & Guaranty Co. v. Rainey.

4. **SAME. Requisites of a decree to make a disallowed petition in a pending chancery suit a part of the record; mere recital of the filing thereof is not sufficient.**

The matters in the petition in a pending chancery suit may be sufficiently embodied in a decree to be presented to the supreme court, but in such cases the decree must fully recite the nature and character of the petition with its material averments, together with the relief sought, and the action of the chancellor thereon, and the mere recital that the petition was filed is not sufficient.    (*Post, p.* 374.)

Case cited and approved:   Nance v. Chesney, 101 Tenn., 466.

5. **SAME. Petition filed in pending chancery suit without order of chancellor is not a part of the record; recital of filing.**

The fact that a petition is filed in a creditor's suit without an order of the chancellor does not make them a part of the record, especially where the chancellor declines to permit them to be filed, and the mere recital in the decree that the petition was filed, without more, does not make it a part of the record. (*Post, p.* 374.)

6. **SUPREME COURT PRACTICE. Offering to suffer judgment for adversary's claim, with interest and cost, ends litigation, without payment.**

A litigant may end the litigation in the supreme court by agreeing in open court to suffer judgment to be pronounced against him for his adversary's claim, with interest and costs, without the necessity of tendering or paying the money into court. (*Post, pp.* 376-378, 384, 385.)

7. **SAME. Same. Where the appellants were not shown to be sued as representing a class in the bill, nor as appealing as such.**

Where it is sought to prevent the dismissal of an appeal in a creditor's suit upon the appellee's agreeing to suffer judgment against him in favor of the appellants, on the ground that the appellants were sued as defendants of record as the representatives of a particular class of creditors, the bill must

Fidelity & Guaranty Co. v. Rainey.

show that they were made parties defendant as the representatives of a particular class, especially where the decree granting the appeal shows that they prayed an appeal on their individual accounts.   (*Post, pp.* 377-385.)

Cases cited and approved:   Brown v. Brown, 86 Tenn., 310; Lanchester v. Thompson, 5 Madd. Chy. Rep., 15.

Cases cited and distinguished:   Bank v. Bank, 23 Pick. (Mass.), 492; Schumate v. Crockett, 43 W. Va., 91; Bilmyer v. Sherman, 23 W. Va., 662 (and citations).

8. **OFFICIAL BONDS.** Not in conformity with statute and in excess of statute is enforceable to extent of statute and its own stipulations as a common law bond.

Where an official bond is, voluntarily and for a valid consideration, executed by a public officer and his surety, but is not conditioned according to statute, omitting one prescribed condition, and embracing other conditions not required by statute, but not against public policy, such bond is nevertheless a good common law bond and will be enforced to the full extent of the penalty imposed for the breach of the conditions prescribed by statute and those stipulated in the bond.   (*Post, pp.* 385-399.)

Code cited and construed:   Secs. 402, 403, 1094 (S.); secs. 368, 369, 961 (M. & V.); secs. 326, 327, 773 (T. & S. and 1858).

Cases cited and approved:   Hibbitts v. Canada, 10 Yerg., 465; Goodrum v. Carroll, 2 Humph., 490; Polk v. Plummer, 2 Humph., 500; Jones v. Wiley, 4 Humph., 146; Boughton v. State,. 7 Humph., 193; Governor v. Allen, 8 Humph., 177; Davis v. Bratton, 10 Humph., 179; Banks v. McDowel, 1 Cold., 84, 85; McLean v. State, 8 Heisk., 270-275; Allison v. State, 8 Heisk., 312; Maddox v. Shacklett (Tenn. Chy. App.), 36 S. W., 731; United States v. Hodson, 10 Wall., 409; Minor v. Bank, 1 Pet., 46; Coons v. People, 76 Ill., 383; Bank v. Smith, 5 Allen (Mass.), 415; Fiala v. Aimsworth, 63 Neb., 4; Bank v. Adams, 12 Pick. (Mass.),. 303.

9. **SAME.** Same. Condition to perform duties is a guarantee against defalcations in funds.

A condition in the bonds of a public officer that he will truly and faithfully perform all the duties of his office is a guarantee of his personal honesty, furnishing indemnity against his defalcations in accounting for funds paid into his hands. (*Post, p.* 397.)

Cases cited and approved: Minor v. Bank, 1 Pet., 46; Fiala v. Aimsworth, 63 Neb., 4; Bank v. Adams, 12 Pick. (Mass.), 303.

10. **STATE.** Priority of the State as a creditor is a common law right received from North Carolina.

The prerogative right of the sovereign to receive payment of fines, forfeitures, taxes, and revenue, and such demands as are due it in its sovereign capacity was a part of the common law transmitted to Tennessee from North Carolina. (*Post, pp.* 404, 405.)

11. **SAME.** Same. Priority of State in collection of delinquent revenue on official bond of defaulter.

The State is entitled to priority over the other creditors of a defaulting public officer in the collection of its delinquent revenue on his official bond. (*Post, pp.* 399-405.)

Code cited and construed: Sec. 4090 (S.); sec. 3195 (M. & V.); sec. 2350 (T. & S. and 1858).

Cases cited and approved: Field v. Wheatley, 1 Sneed, 351; Orem v. Waightson, 51 Md., 34; State v. Bank, 6 Gill & J., 205, 228; Board v. Bank, 30 N. J. Eq., 311; Glynn Co. v. Terminal Co., 101 Ga., 244, and citations; State v. Pemberton, Dud., 15; Hoke v. Henderson, 14 N. C., 23.

Cases cited and disapproved: Klinck v. Keckley, 2 Hill, Eq., 250, 256; Baxter v. Baxter, 23 S. C., 114; State v. Harris, 2 Bailey, 598.

12. **COUNTIES.** Have no priority over other creditors of a defaulting public officer.

Counties are not entitled to priority over the other creditors of a defaulting public officer in the collection of claims on his official bond. (*Post, pp.* 402, 403, 405.)

Fidelity & Guaranty Co. v. Rainey.

Cases cited and approved:  State v. Bank, 5 Bax., 1; Leeper v. State, 103 Tenn., 528; Glynn Co. v. Terminal Co., 101 Ga., 244.

13. **MUNICIPAL CORPORATIONS.**  **Have no priority over other creditors of a defaulting public officer.**

The municipal corporations of the State are not entitled to .priority over the other creditors of a defaulting public officer in the collection of their claims on his official bond.  (*Post, p.* 405.)

14. **OFFICIAL BONDS.**  **Surety is not liability for interest on penalties until judgment is rendered therefor.**

Where a surety on a defaulting public officer's bonds filed its bill, in the nature of a general creditor's bill, against the officer and certain of his official creditors as representatives of all his official creditors to ascertain its liability on such bonds it was chargeable with interest on the penalties of the bonds from the date of the decree adjudging liability, and not from the date of the filing of the bill.  (*Post, pp.* 377, 405, 406.)

Cases cited and approved:  State, ex rel., v. Blakemore, 7 Heisk., 657; State v. Cole, 13 Lea, 366.

---

FROM DAVIDSON.

---

Appeal and writ of error from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

CLARENCE T. BOYD and E. L. MCNEILLY, for complainant.

P. D. MADDIN, SAM. N. HARWOOD, MCALISTER & SMITH, BROWN & AKERS, P. M. ESTES, and THOS. B. JOHNSON, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The present litigation was evolved from the defalcation of Walter S. Rainey, clerk of the First and Second circuit courts of Davidson county.

It appears from the record that, when Walter S. Rainey entered upon his duties as clerk of the First and Second circuit courts, he executed three official bonds, one for $5,000 known as the "revenue bond," a second for $10,000, known as the "official bond," and a third for $5,000, known as the "special" or "receiver's" bond, conditioned to cover property or funds which might at any time come to the hands of such clerk as special commissioner and receiver by appointment of the court.

The United States Fidelity & Guaranty Company became surety on each of these official bonds. About January 5, 1901, and before the expiration of his term, the said Rainey was removed from office, and it was ascertained that the liabilities of the office were from $15,000 to $25,000 in excess of the assets, which indebtedness fell upon his surety, the guaranty company.

The present bill was filed April 5, 1901, by the United States Fidelity & Guaranty Company against Walter S. Rainey and twenty-seven creditors for the purpose of ascertaining the company's liability as surety on said official bonds.

The suit is in the nature of a creditors' bill, and was brought against various creditors of Rainey who might

be interested in any fund or funds which may have been paid into the hands of said Rainey as clerk, and for which he was liable on his official bond.

It appears that a few creditors were named as defendants for the purpose of representing all other creditors similarly situated; all the creditors amounting probably to 659, and being too numerous to bring before the court.

It is shown that Rainey was indebted to these various creditors in sums ranging from ten cents up to $6,000, and it is said that, in order to avoid bringing this large number of persons before the court, twenty-seven individuals were selected, and made parties defendant to represent all the other classes.

Complainant states that it is ready and willing to pay whatever sum may be necessary under said bonds as soon as the proper amount of each bond can be determined, and asked for a complete account of the office and the exact amount due from complainant by reason of said suretyship.

The prayer of the bill is: That complainant be allowed to file this bill as a general creditors' bill in behalf of itself and all other creditors of the said Walter S. Rainey, clerk of the said two circuit courts.

That a general reference to the clerk and master be ordered to take proof and report the cash balance due from each and every case in the circuit courts when said Rainey was removed from office, the source from

which the fund arose, and the bond under which he and his surety were to be liable therefor.

That all other liabilities of the office be ascertained and the bond under which he and his sureties would be liable therefor.

That all parties be restrained by injunction from prosecuting suits to recover any amount due from complainant as surety, except in this case, and that all parties having suits pending against said office be required to file their claims and prosecute the same herein.

That all necessary references be had to ascertain the total liabilities of defendant Rainey's office, the total assets, the names of the parties entitled to participation in the assets, the amount of their claims, the proper pro rata to be paid on claims, and all other necessary matters.

On June 4, 1904, a decree was pronounced by the chancellor sustaining the bill as a general creditor's bill, and ordering publication for creditors to file their respective claims against said Rainey, clerk, on or before the expiration of sixty days from the date of this decree.

Publication was accordingly made in pursuance of the direction of said decree. Answers were filed by the State, county, and city by Len K. Hart and W. B. Clark, county trustees, averring that said Rainey was indebted to said authorities for a large amount of State,

county, and municipal taxes which he had failed to pay over.

It appears that several other persons filed answers setting up claims against said Rainey, but most of the defendants named in the bill failed to answer, and orders *pro confesso* were taken at the rules against fifteen out of the twenty-seven creditors named as defendants named. Other creditors from time to time filed petitions presenting claims which they asked to be allowed.

In obedience to the order of reference the clerk and master took proof, and on April 6, 1905, filed his report, in which he set out the official bonds of said Rainey, and also schedules showing all obligations of the office.

The total liabilities of the circuit court aggregated $25,000, summarized as follows:

| | | |
|---|---|---|
| (1) | State tax on litigation ............$ | 118.19 |
| (2) | County tax on litigation ............ | 118.38 |
| (3) | State taxes for redemption of property ........ ................. | 2,845.24 |
| (4) | County and school taxes for redemption of property (Davidson county).. | 3,262.10 |
| (5) | City tax (due Nashville).......... | 8,762.01 |
| (6) | Due sundry persons .............. | 948.59 |
| (7) | Due sundry persons, tax paid twice... | 23.24 |
| (8) | Due David Crutchfield, fees ......... | 284.05 |
| (9) | Due Len K. Hart, trustee, fees...... | 1,238.68 |
| (10) | Due W. B. Clark, trustee, fees....... | 104.28 |

| | | |
|---|---|---|
| (11) | Due sundry officers, costs .......... | 335.53 |
| (12) | Due sundry witnesses, costs ........ | 323.78 |
| (13) | Due sundry judgments, etc. ........ | 6,636.16 |

Total ........ ............$25,000.23

The clerk and master also reported a claim in favor of Nolen and Slemons for the sum of $35, which was a deposit paid into the circuit court in the case of *Lewis Peel* v. *Nashville Railway & Light Company.*

The master also reported a deposit in the case of *Mayor and City Council of Nashville* v. *Louisville Property Company* for the sum of $6,100.

The master also reported the conditions of the several official bonds as follows:

Bond No. 1 for $5,000, known as the "revenue bond," was conditioned as follows:

"Now, therefore, should the above bound Walter S. Rainey truly and faithfully perform all the duties of the office of circuit court clerk for the term of his office according to the requirements of law, and shall faithfully collect and pay over within the time and in the manner prescribed by law, to the treasurer of the State of Tennessee, or to the proper officer designated by the laws of Tennessee to receive the same, all State taxes by him collected, or that ought to be collected, and also all fines and forfeitures which may or ought to be collected by him, during the said term of office, then this obligation to be void, otherwise to remain in full force and effect."

Bond No. 2, for $10,000 as clerk of the circuit court, was conditioned as follows:

"To be void on condition, the said Walter S. Rainey this day inducted into the office of circuit court clerk of Davidson county, safely kept and preserved the records of said court, and faithfully discharged the duties of his office."

Bond No. 3, for $5,000, known as the "receiver's bond," was conditioned as follows:

"To be void on condition that Walter S. Rainey, this day inducted into the office of circuit court clerk of Davidson county, Tennessee, does account for all the property or funds which may at any time come into his hands as special commissioner and receiver by appointment of the court or judge thereof."

Exceptions were filed on behalf of the mayor and city council of Nashville to the report of the master, for the reason that the State was given priority over the city in the satisfaction of its claim for taxes on said official bonds, and claiming that the city was entitled to share equally with the State and county in the penalties of said bonds for the collection of its taxes, and other claims.

Other exceptions were filed on behalf of the city which it is not material to notice.

Exceptions were also filed on behalf of the county of Davidson, which raised substantially the same questions as to priority made by the mayor and city council of Nashville.

Exceptions were also filed by the United States Fidelity & Guaranty Company, and by P. M. Estes and Len K. Hart.

These exceptions were all overruled by the clerk, but on appeal the chancellor modified the clerk's report as follows:

"As to the revenue bond, the court held that items 1, 2 and 3 of the report, including State and county taxes on litigation, and State taxes for the redemption of property, aggregating $3,081.82, should be paid out of bond No. 1, which should then be canceled, and that the entire penalty of bond No. 2, the original official bond for $10,000, was insufficient to meet all claims reported under it, and adjudged that the surety company was liable for the entire penalty of bond No. 2, and that same should be applied, first, to the payment of county and school taxes due Davidson county, Tenn., $2,845; next, to the payment of city taxes due the mayor and city council of Nashville, $8,762.01, less certain claims therein explained."

The result of the decree is that the first three items of the report, aggregating $3,081.82, are to be paid in full, and charged against the $5,000 revenue bond, which is then to be canceled, and that items 4 and 5 for county and school tax for redemption of property and city taxes due Nashville, amounting to $12,024.11, are to be paid out of the $10,000 bond, and that the remaining items, 6 to 13, shall be paid ratably out of the balance, but, as items 4 and 5 far more than exceed the sum of the

$10,000 bond, it leaves nothing to be paid on the remaining items.

The material change made by the chancellor in the clerk's report was that he adjudged priority to the county and city for the amount of their taxes, aggregating a little over $12,000, and he released the surety company from the balance on the revenue bond, amounting to $1,919, after charging it with the sum of $3,081.

This decree was rendered January 25, 1906.

It appears that on May 21, 1906, the Louisville Property Company presented a petition in said cause, which was before the fund had been distributed under the decree of the chancellor, but at a term subsequent to the rendition of the final decree.

The petitioner presented a claim for $6,100, which had been paid by the city of Nashville into the hands of Walter S. Rainey, clerk.

The fund, as shown in the petition, arose out of condemnation proceedings by the city against the Louisville Property Company.

It was averred that the property condemed by the city was assessed at $6,100 by the jury of view, and, this amount not being satisfactory to the Louisville Property Company, it demanded a trial by jury for the assessment of the damages. The city thereupon paid the amount assessed by the jury of view into the circuit court; but, before the case was finally tried, the defalcation of Rainey occurred.

The claim in which the Louisville Property Company was interested had been reported by the clerk at $6,100, but it was classified by the clerk under class 13—"due sundry judgments," etc.—and it was not reported as a claim in favor of the Louisville Property Company.

The chancellor, however, declined to permit the petition of the Louisville Property Company to be filed in said cause, indorsing his action thereon as follows:

"Application to file this petition and to intervene was not made in due season, and now comes too late. The court refuses the application on these and other grounds. May 21, 1906."

The following assignments of error were filed on behalf of the Louisville Property Company, namely:

(1) It was error for the chancellor to refuse to allow the Louisville Property Company to file its petition, and set up its claim as a creditor of Walter S. Rainey in this case.

(2) The chancellor was in error in refusing to allow the Louisville Property Company to file its amended petition setting up its claim as a creditor of Walter S. Rainey.

A preliminary question, however, arises on the appeal of the Louisville Property Company, and that is whether said company is properly in the supreme court. We think it quite clear that this company had a right, before the final distribution of the funds by the chancellor in the court below, to become a party to said cause, and present its claim.

It is true the petition of said company was not filed until the term following that, in which the final decree was pronounced adjudicating the claim of creditors, and the liability of the guaranty company upon the official bonds executed by it as surety of Walter S. Rainey. However, when this petition was filed, the cause was still in the chancery court, no appeal having been prayed or prosecuted by any creditor, and, as already stated, no part of the fund had been distributed.

The chancellor in our opinion was in error in holding that the petition had not been filed in time. *Hurley and Paul, Administrators,* v. *Jas. M. Murrell's Heirs and Creditors,* 2 Tenn. Ch., 620; *Latta* v. *Summerow,* 4 Lea, 486; *Hearn* v. *Roberts,* 9 Lea, 368; *Prewett* v. *Goodlett,* 98 Tenn., 97, 38 S. W., 434; *Olcott* v. *Headrick,* 141 U. S., 548, 12 Sup. Ct., 81, 35 L. Ed., 851; *Akers* v. *West,* 1 Baxt., 21; 2 Daniell's Chancery Practice, sec. 1205; *Matter of Howard,* 9 Wall., 175, 19 L. Ed., 634; *Johnson* v. *Waters,* 111 U. S., 674, 4 Sup. Ct., 619, 27 L. Ed., 547.

We think it quite clear under these authorities that in a suit for the administration of an insolvent estate, or for the purpose of subjecting funds under a general creditors' bill, any owner of a claim is entitled to present it, and share in the fund at any time before it has been finally distributed.

But the question remains whether the petition of the Louisville Property Company is properly before this court.

It is conceded that no formal bill of exceptions authenticated by the chancellor is found in the record preserving the petition of the Louisville Property Company.  It does appear that counsel for that company prepared and tendered to the court a bill of exceptions embodying the original and amended petition, and requested the signature of the chancellor, but he declined to sign it on the ground, as set forth in the decree, "that all of the proceedings heretofore had in this cause on said petition, and the action of the court thereon, and the exceptions of the Louisville Property Company to the action of the court, all fully appear in the record and on the minutes of the court."

It is said that the original petition was regularly marked "Filed," as also the petition to rehear, and as well the amended petition of the company.  It appears that these several petitions were marked "Filed" when they were presented, without an order of the chancellor; and it is now argued that they thereby became parts of the record as if they had been directed to be filed by the chancellor.

It is said that the court simply refused the prayer of the petition, but did not order the petitions to be stricken from the files.

Attention is also called to the fact that the first petition bears the chancellor's signature in refusing its prayer.  It is said that the decree of June 5th, which was duly signed by the chancellor, allows the petition to rehear, and, in connection therewith, a substituted

petition asking leave of the court to be made a party thereto was filed.

This substituted petition was also marked "Filed." The chancellor declined to allow the amended petition to be filed upon the ground that the application was filed at a term of the court subsequent to the one at which the decree was rendered; thus recognizing, says counsel, that the petition was a part of the records of the court.

It is further said that, when the court granted the appeal in this case, it especially recognized and referred to the petition of the Louisville Property Company to the same extent as would have been done by a bill of exceptions.

The decree referred to recites:

"When the court is pleased to grant the Louisville Property Company an appeal from the decrees heretofore rendered, which refused the Louisville Property Company the right to come in and be made a party to this cause on its petition filed herewith on June 5, 1906, otherwise as shown by this record."

Now, the argument of counsel is that the marking of the petitions "Filed," and the recital of these petitions in the several decrees of the court, recognize them, and make them a part of the record in the case.

We are unable to agree with counsel in this contention. Under the recognized practice, in order to make a petition, the filing of which has been disallowed in the lower court, a part of the record on appeal, it

must be embodied in the transcript by bill of exceptions duly signed and authenticated by the chancellor.

It is true the matters in the petition may be sufficiently embodied in a decree to be presented to this court, but in such cases the decree must fully recite the nature and character of the petition with its material averments, together with the relief sought, and the action of the chancellor thereon. *Nance* v. *Chesney,* 101 Tenn., 466, 47 S. W., 690.

The fact that the original and amended petitions were filed in the cause without an order of the chancellor did not make them a part of the record, especially in view of the action of the chancellor in declining to permit them to be filed. Nor did the mere recital in the decrees of the filing of an original and amended petition by the Louisville Property Company, without more, make said petitions a part of the record herein.

An examination of the petition of the Louisville Property Company will show that the object of the petitioner was to re-open at a subsequent term of the court a decree that had been pronounced at a former term, wherein the liability of the guaranty company on the respective bonds executed by it as well as the order of priority of the creditor had been adjudicated, and to relitigate all of those questions. We do not understand the rule allowing a creditor to file his petition and participate in the assets of an insolvent administration at any time before a final distribution of the assets authorizes such a creditor to come in at a subsequent

term, after a decree has been pronounced settling all of the controverted questions, for the purpose of re-opening the case, and having all of said questions re-heard and reviewed.

In *Allen & Hill* v. *Shanks,* 90 Tenn., 359, 16 S. W., 715, it was said:

"Even an interlocutory decree adjudges rights and settles principles. It is not subject to revision at a subsequent term. . . . But the general rule may be stated to be that if it settles a principle, or adjudges a right, or determines an issue, that in such case it is not open for revision at a subsequent term."

In *Forbes* v. *Memphis R. R. Co.,* Fed. Cas. No. 4926, 2 Woods, 334, it is said:

"It is true that the complainants filed the bill in this case on behalf of themselves and of all others being stockholders, creditors, or bondholders of the corporation defendant who might desire, or be entitled, to intervene. But it was never contemplated, nor is it the proper practice, that the persons embraced in that category should intervene to set aside the proceedings, or to interpose obstacles to the progress of the suit. The complainants, by suing as representatives, open the door to all other parties named to come in, and take the benefit of the proceedings and decree, not to oppose and nullify them. In a suit so instituted parties may come in and prove their claims or status, and participate in all the dividends and benefits to be derived from the suit. Rival creditors by proceedings before a master may

control the priority of their respective liens, and creditors or stockholders may contest the validity of the claims of other creditors and stockholders, but all in subordination to the general object and purpose of the suit to obtain an administration of the company's assets and property.   To be allowed to intervene as general defendants and contestants is another and different thing."

It appearing, moreover, that the petition of the Louisville Property Company was not preserved by a bill of exceptions, nor by decree of the court, it cannot be considered by this court on appeal.

The next question to be considered arises on the appeal of Nolen and Slemons.   As already stated, Nolen and Slemons were creditors of Walter S. Rainey, and were made defendants to the bill of the guaranty company, and presented in the court below a claim for $35, which represented a deposit paid into the hands of the circuit court clerk in the case of *Lewis Peel* v. *Nashville Railway & Light Company*.   That claim was allowed by the clerk and master in the schedule of liabilities reported by him, and this allowance was confirmed by the chancellor; but, on account of the priorities adjudged by the chancellor, this claim would only receive a *pro rata* of seven cents on the dollar, and for this reason Nolen and Slemons prayed and perfected an appeal to this court, and have assigned errors.   The assignments of error made on behalf of Nolen and Slemons are directed mainly to the preference given by

the chancellor in favor of the State, county of David-
son, and the city of Nashville on the several bonds
executed by the guaranty company.

Error was also assigned on the action of the chan-
cellor in adjudging that the surplus of the $5,000 reve-
nue bond could not be subjected to the payment of
the claims of the creditors, and in not adjudging in-
terest against the guaranty company on the $5,000 rev-
enue bond, and the $10,000 clerk's bond from the date
of the filing of the bill.

Error was also assigned on the action of the chancellor
in not adjudging that the two sets of bonds were liable
for all the obligations of Rainey as clerk of both the
circuit court and the Second circuit court.

It further appears that, before the cause was reached
for hearing on the docket of this court, counsel for the
guaranty company paid into the registry of this court
a check for $35, with interest from January 25, 1906,
the date of the decree, and also offered to pay such costs
as this court should deem proper, and thereupon moved
to dismiss the appeal of Nolen and Slemons.

This motion is resisted by Nolen and Slemons on
the ground, first, that the amount tendered to the clerk
was inadequate. It is said the correct amount of their
debt was originally $35, with interest from the filing
of the bill April 1, 1901, amounting to $14.35, making
a total of their indebtedness $49.35, which was in excess
of the amount tendered. In other words, the insistence
is that the amount tendered to the clerk was not suf-

ficient; but this court is of opinion that a tender was not necessary to be made, since counsel for the guaranty company in open court and on the brief agrees to pay or to suffer a decree in favor of Nolen and Slemons for the full amount of their debt, with interest, and also to pay any costs incurred by that firm in the prosecution of its appeal.

A debtor may in this court suffer judgment to be pronounced against him for the amount claimed by his adversary, and ordinarily this ends the litigation without the payment of the money into court. It is not necessary to stop litigation that a litigant shall pay the amount of his adversary's claim, but it is sufficient if he suffers judgment for the claim which his adversary is prosecuting, including the costs incurred in the suit. So that no tender at all was necessary in this case, since the guaranty company, through its counsel, has agreed that Nolen and Slemons may have a decree against it for the full amount of their claim, with interest and costs.

The second ground on which Nolen and Slemons resist the motion of the Guaranty Company to dismiss their appeal is that said firm was selected by the complainants below as defendants to represent a certain class of creditors, and that the appeal by Nolen and Slemons was not simply on their own account, but also on behalf of all other creditors represented by them. The entry of appeal was limited to Nolen and Slemons' claim. It is admitted by learned counsel that

ordinarily the payment of the claim of a litigant will end the litigation; but it is said that Nolen and Slemons were designated by the complainants to represent a class, and they are waging a contest in this court on behalf of those creditors as well as themselves, and especially to see that the penalty of the $10,000 bond is prorated to all the creditors, instead of being appropriated exclusively to the payment of the claims of the county and city.

It is further said that no interest was awarded to the creditors represented by Nolen and Slemons, and they are insisting that the guaranty company should be charged with interest at the rate of six per cent. per annum on the amount of the two bonds, to wit, $15,000, which would make $900 per annum for $6\frac{2}{3}$ years, which would create a fund of about $6,000 additional to be prorated among these creditors.

It is said that if the motion of the guaranty company to dismiss the appeal of Nolen and Slemons is allowed, the claims of other creditors represented by them will be defeated, except the payment of seven cents on the dollar allowed by the chancellor in the court below.

An able argument has been submitted by counsel for Nolen and Slemons in opposition to the motion of the guaranty company to dismiss the appeal of the former.

It is insisted that this case is analogous in principle to those cases in which there are numerous parties constituting a class, and the rights of all are sought to be determined by making a few defendants to represent all.

1 Daniell's Chancery Practice (5th Ed.), 759 (*794), is cited, wherein it is said:

"After a decree has been made of such kind that other persons besides the parties on record are interested in the prosecution of it, neither the plaintiff nor defendant on consent of the other can obtain an order for the dismissal of the bill. Thus, where the plaintiff sues on behalf of the same class, although he comes upon his own mere motion and retains the absolute dominion of the suit until decree, and may dismiss the bill at his pleasure, yet after a decree he cannot by his conduct deprive other persons of the same class of the benefit of the decree, if they think fit to prosecute it. The reason of the distinction is that, before decree, no other person of the class is bound to rely upon the diligence of him who has instituted his suit, but may file a bill of his own, while, after the decree, no second suit is permitted." See, also, 1 Daniell's Chancery Practice (5th Ed.), 226-228, 233.

In *Atlas Bank* v. *Nahant Bank*, 23 Pick. (Mass.), 492, Chief Justice Shaw said:

"Plaintiffs having once instituted the proceedings as a statute remedy for themselves and others, they go on afterwards for the benefit of the parties concerned, and the original plaintiffs have no right to discontinue any more than a petitioning creditor could discontinue the proceedings under a commission of bankruptcy."

In 6 Pomeroy, Eq. Jurisprudence, sec. 892, the author says:

"In such cases (where one creditor sues on behalf of himself and others who desire to come in) the question may arise as to the power of the creditor who files the bill to control the proceedings. If other creditors have come in, or if an interlocutory judgment has been rendered establishing the rights of the parties, the original complainant cannot of his own motion dismiss the bill. Where other creditors have not come in, however, it has been held that he may dismiss the bill."

In *Schumate, Ex'r,* v. *Crockett,* 43 W. Va., 491, 27 S. E., 240, it appeared a suit had been brought by one lien creditor on behalf of himself and other creditors similarly situated. There was a reference, a report, and a decree. After this the complainant's debt was paid, and defendant sought thereby to stop the suit. The court said: "The debt of the plaintiff was paid, but the suit was expressly for all lienors, and others had appeared and become parties, and that payment could not defeat the decree, the decree belonging to all, not one of the creditors, and any creditor yet unpaid had a right to enforce it. He could go on in the name of the original plaintiffs, or, if anybody so asked, the plaintiff's name could be stricken out and another creditor's name substituted, and the result was that the payment of the plaintiff's debt did not stop the suit."

In *Bilmyer* v. *Sherman,* 23 W. Va., 662, the court said:

"After an order of reference, the plaintiff in such bill ceases to have absolute control of it, and it cannot

be dismissed by him without the consent of the other creditors. To hold otherwise would allow the defendant debtor to collude with the nominal plaintiff in controlling the litigation, and in this manner oftentimes greatly hinder, delay, and defraud other lien creditors of their debt. It was held the defendant had no right to have the suit dismissed." *Lewis* v. *Laidley* (supreme court of appeals W. Va., 1894), 39 W. Va., 422, 19 S. E., 378; *Slusher* v. *Simpkins* (1897), 101 Ky., 594, 40 S. W., 570, 43 S. W., 692.

"In such cases (where one creditor sues on behalf of himself and others who desire to come in) the question may arise as to the power of the creditor who files the bill to control the proceedings. If other creditors have come in, or if an interlocutory judgment has been rendered establishing the rights of the parties, the original complainant cannot in his own motion, dismiss the bill. Where other creditors have not come in, however, it has been held that he may dismiss the bill."

In *Schumate, Ex'r,* v. *Crockett,* 43 W. Va., 491, 27 S. E., 240, it appeared that a suit had been brought by one lien creditor on behalf of other creditors similarly situated. There was a reference, a report, and a decree. After this the complainant's debt was paid, and defendant sought thereby to stop the suit. The court said:

"The debt of the plaintiff was paid; but the suit was expressly for all lienors and others had appeared and become parties, and that payment could not defeat the

decree. The decree belonging to all—not one of the creditors, and any creditor yet unpaid had a right to enforce it. He could go on in the name of the original plaintiff, or if anybody so asked, the plaintiff's name could be stricken out and another creditor's name substituted, and the result was that the payment of the plaintiff's debt did not stop the suit."

In *Bilmyer* v. *Sherman*, 23 W. Va., 662, the court said:

"After an order of reference, the plaintiff in such bill ceases to have absolute control of it, and it cannot be dismissed by him without the consent of the other creditors. To hold otherwise would allow the defendant debtor to collude with the nominal plaintiff in controlling the litigation, and in this manner oftentimes greatly hinder, delay, and defraud other lien creditors of their debt. It was held the defendant had no right to have the suit dismissed." *Slusher* v. *Simpkins* (1897), 101 Ky., 594, 40 S. W., 570, 43 S. W., 692; *Campbell* v. *Texas R. R. Co.,* Fed. Cas. No. 2366, 1 Woods, 368.

"The persons on whose behalf the actual parties to a representative suit act are regarded as *quasi* parties, and for many purposes they have the rights of actual parties. Thus, if the nominal complainant neglects to proceed, or the suit becomes abated, any member of the class for whom the complainant was acting may have leave to prosecute." 15 Enc. Pl. and Pr., p. 634.

In 15 Enc. Pl. and Pr., p. 637, it is said:

"Where a complainant sues on behalf of himself

and all other persons of the same class, although he acts on his own mere action, and retains the absolute dominion of the suit until the decree, and may dismiss the bill at his pleasure, upon obtaining leave of court to do so, yet after a decree has been made of such a kind that other persons besides the parties on the record are interested in prosecution of it neither the complainant nor the defendant, on the consent of the other, can obtain an order for the dismissal of the bill, if any of the persons for whose common benefit it was recovered see fit to prosecute it."

We are of opinion that the authorities cited by counsel for Nolen and Slemons are not controlling in the present instance.

We do not find after a careful examination of this bill that Nolen and Slemons are made parties defendant as the representative of any particular class of creditors. Such an allegation is an indispensable condition in the application of the principles of law enunciated in the authorities cited. *Brown* v. *Brown,* 86 Tenn., 310, 6 S. W., 869, 7 S. W., 640; *Lanchester* v. *Thompson,* 5 Madd. Ch. Rep., 15.

Again, an examination of the decree granting an appeal to Nolen and Slemons will show that an appeal was not prayed by them as the representatives of any class of creditors, but on their individual account.

We are therefore of opinion that, when counsel for the guaranty company offered to suffer judgment against said company in favor of Nolen and Slemons for the full

amount of their account, with interest and costs, this ended the litigation so far as that firm was concerned.

The next matter to be considered is the writ of error sued out by Len K. Hart and W. B. Clark to the decree of the chancellor. The record discloses that these petitioners were both made parties defendant by name to the original bill, and each filed an answer setting up his respective claim; that of Hart amounting to $1,238.68, and the claim of Clark $104.28. These claims were allowed by the clerk and master, but petitioners excepted to his report giving priority in the distribution of the funds to the State of Tennessee.

As already seen, these exceptions were overruled by the chancellor, who, in addition, gave priority to the taxes due the county of Davidson, and the city of Nashville.

The errors assigned in this court on behalf of Len K. Hart and W. B. Clark are as follows:

"First. The chancellor was in error in giving preference against the $10,000 bond to the amount collected by Rainey for redemption of property for county taxes due Davidson county, $3,262.10.

"Second. The chancellor was in error in giving preference against the $10,000 bond, to the amount due the mayor and city council of Nashville, $8,762.01.

"Third. The chancellor was in error in not decreeing that the creditors in classes 4 to 14, inclusive, stood upon an equal footing, and should participate ratably in the penalty of the $10,000 bond.

12v Tenn—25

"Fourth. The chancellor was in error in not adjudging that the surplus of the $5,000 bond, commonly known as the 'revenue bond,' which, in this case, was also conditioned that Rainey should faithfully discharge all of the duties of his office, should, after paying items 1 and 2, be prorated to items 3 to 13, inclusive.

"Fifth. The chancellor was in error in giving priority to the taxes collected due the State of Tennessee, and in not holding that the State stood upon a par with the remainder of the creditor classes 2 to 13, inclusive.

"Sixth. In not adjudging interest against the United States Fidelity & Guaranty Company from the date of the filing of its bill.

"Seventh. The chancellor was in error in not adjudging that the two sets of bonds were liable for all the obligations of the office, and in not holding that the office bond of $10,000 as clerk of the Second circuit court was liable also for any obligations as clerk of the First circuit court."

It should be observed that Len K. Hart and W. B. Clark in their petition for writ of error asked this court to allow the writ of error on behalf of all other creditors of Walter S. Rainey who stand in the same relation to the case that these parties stand. But, for the reasons already stated, this court will only consider such claims as are before it by appeal or writ of error sued out by individual claimants, and not upon the case made by any other appellant as the supposed representative of a class.

The first question arising on the assignments made by Hart and Clark on their writ of error is in respect of the priorities adjudged by the chancellor in favor of the State, the county, and city on the revenue and official bonds executed by the guaranty company. These bonds were executed in pursuance of the requirements of Acts 1794, chs. 1 and 14, found in Shannon's Code, sec. 402:

"Every clerk of a court before entering upon the duties of his office shall enter into bond with sufficient surety, to the satisfaction of his court, in the sum of $10,000, payable to the State, and conditioned for the safe-keeping of the records, and for the faithful discharge of the duties of his office."

Section 403:

"Also a bond in the sum of $5,000 conditioned to account for and pay over all moneys arising from taxes on suits, fines, and forfeitures; otherwise the clerk shall be liable to pay a sum equal to treble the taxes, fines, and forfeitures which have come, or ought to come to his hands."

The official bond for $10,000 is conditioned as follows:

"To be void on condition the said Walter S. Rainey this day inducted into the office of circuit court clerk of Davidson county, safely keep and preserve the records of said court, and faithfully discharge the duties of his office."

An examination of the revenue bond will show that

it was not executed in exact conformity with the require-
ments of the statute.   That bond was in the penalty of
$5,000, conditioned as follows:

"Now, therefore, should the above bound Walter S.
Rainey truly and faithfully perform all the duties of
the office of circuit court clerk for the term of his office
according to the requirements of law, and shall faith
fully collect and pay over within the time, and in the
manner prescribed by law, to the Treasurer of the State
of Tennessee, or to the proper officer designated by the
laws of Tennessee to receive the same, all State taxes
by him collected, or that should be collected, and also
all fines and forfeitures which may, or ought to be col-
lected by him during the said term of office,  .  .
then this obligation to be void, otherwise to remain in
full force and effect."

When the conditions of this bond are compared with
the conditions prescribed by section 403, Shannon's
Code, it will be noticed that the bond does not specific-
ally cover "taxes on suits" as required by the statute.
Again, it will be observed that the bond actually ex-
ecuted is conditioned to pay over all State taxes col-
lected, or that ought to be collected by said clerk, when
no such condition is prescribed by the statute for this
particular bond.

It will be further seen that the condition of the bond
given requires the said Walter S. Rainey to "truly and
faithfully perform all the duties of the office of circuit
court clerk," etc.   But this language is not in the stat-

ute.  Section 1094, Shannon's Code, provides as follows:

"Whenever any officer required by law to give an official bond, acts under a bond which is not in the penalty, payable or conditioned as prescribed by law, or is otherwise defective, such bond is not void, but stands in the place of the official bond, subject on its condition being broken to all the remedies which the person aggrieved might have maintained on the official bond of such officer, executed, approved, and filed according to law."

It will be observed that under the provisions of the section last cited the defectively executed bond stands in the place of the official bond, and any conditions prescribed by the statute for the official bond which are omitted from the bond actually given will be supplied and read into it.  It is to be remarked, however, that the revenue bond actually given in this case not only omitted one of the conditions prescribed by the statute for the official bond, but it superadded other conditions which were not required.

It appears, however, that this bond was voluntarily executed by the guaranty company, and, although not in conformity with the statute, it is a good common-law bond, and the surety is liable according to his undertaking.

Mr. Brandt, in his work on Suretyship and Guaranty (volume 1, section 22), says:

"The general rule is that a bond, whether required by statute or not, is good at common law if entered into

voluntarily for a valid consideration, and if it is not repugnant to the law or policy of the law, and the surety on such bond is bound thereby. The voluntary bond of a State treasurer which is not demandable by law of a county treasurer where there is no law requiring a bond to be given of a deputy collector of customs, where there is no law prescribing a bond to be given of a plaintiff in an attachment suit when no bond is required by law, are all valid, and bind the sureties who sign them." *Thompson* v. *Buckhannon,* 2 J. J. Marsh. (Ky.), 416; *Hoboken* v. *Harrison,* 30 N. J. Law, 73; *Cotton's Guardian* v. *Wolf,* 14 Bush (Ky.), 238; *Tinsley* v. *Kirby,* 17 S. C., 1; *State* v. *Sooy,* 38 N. J. Law, 324; *Supervisors of St. Joseph* v. *Coffenbury,* 1 Mich., 355; *Dignan* v. *Shields,* 51 Tex., 322.

"Where a bond is required by law to be given, the voluntary bond of an executor or administrator to the ordinary, which varies from the form prescribed by the statute, of a cashier containing nothing contrary to law, but varying from the statutory form, of a plaintiff in replevin, in which the condition does not conform to the statute, are all valid and binding on the sureties. . . . A statute required that a bank cashier should give a bond conditioned for the faithful performance of his duties. The cashier gave a bond which provided for past as well as future delinquencies. Held the bond was not void because it contained more than provided by statute. Being a voluntary bond, and for a lawful purpose, it was good at common law." *Ordinary* v. *Cooley,*

30 N. J. Law, 179; *Grocers' Bank* v. *Kingman,* 16 Gray (Mass.), 473; *Franklin Bank* v. *Cooper,* 36 Me., 179.

The same author, at section 24, says:

"The principle that a surety in a voluntary bond made upon good consideration, and which does not contravene the policy of the law, or the prohibition of the statute is liable at common law on such bond, has been applied to a great variety of circumstances. Such a bond is valid even though another bond be required by a statute. Thus, where a statute required a bank cashier to give a bond with two or more sureties, and he gave a bond with only one surety, such surety was held liable. The statute did not say no other bond but the one required should be taken, and was only directory." *Bank of Brighton* v. *Smith,* 5 Allen (Mass.), 413.

The same author (volume 2, section 520), says:

"If a person occupying official position voluntarily gives a bond providing against loss by reason of his acts as to matters concerning which there is no statutory provision, such bond, although not a statutory bond, is, if it is founded on a sufficient consideration, and is not prohibited by statute nor contrary to public policy, valid and binding on the principal, and his surety as a voluntary common-law obligation." *United States* v. *Mason,* 2 Bond, 183, Fed. Cas. No. 15737; *Farmers' & Mechanics' Bank* v. *Polk,* 1 Del. Ch., 167; *Bank of The Northern Liberties* v. *Cresson,* 12 Serg. & R. (Pa.),

306; *Potter* v. *State,* 23 Ind., 550; *McWilliams* v. *Norfleet,* 60 Miss., 987.

Our own authorities are in accord with the text of Mr. Brandt. In *Hibbits* v. *Canada and Others,* 10 Yerg., 465, it was held:

"An administration bond made payable to the chairman of the county court and his successors in office, instead of the governor of the State, as required by law, cannot be sued upon by the successor in office, but is a good voluntary bond, and suit may be brought upon it in the name of the original payee or his personal representative, if he be dead." In *Goodrum* v. *Carroll,* 2 Humph., 490, 37 Am. Dec., 564, it appeared:

"The bond upon which the suit was brought was executed by the defendants to Wm. Carroll, governor of Tennessee, and his successors in office in the penal sum of $10,000, conditioned that T. C. Porter, who had that day been appointed sheriff of Giles county, should faithfully execute and perform the duties of that office."

The court said:

"This was not an office bond, according to the statute, because the penalty is $10,000 instead of $12,000, as required by the statute, and because it was not approved and recorded, as the statute directs. It has been decided by this court (10 Yerg., 465), and is admitted, that a bond executed by a public officer and securities, though not good as a statutory bond, may nevertheless be binding as a voluntary obligation upon which an action at common law may be maintained."

*Polk* v. *Plummer,* 2 Humph., 500, 37 Am. Dec·, 566, is cited by counsel for the guaranty company as authority, to the effect that a bond containing conditions superadded to those prescribed by the statute can only be enforced as a statutory bond, but, as said in *Jones* v. *Wiley,* 4 Humph., 146:

"It has been determined that, although the bond may be good as a voluntary bond, it containing no provisions which are improper, illegal, or against public policy, but quite the contrary, still, not having been taken by the proper authority and pursuant to law, it is not good and effectual as an official or statutory bond. . . . There is nothing inconsistent with this view of the matter in the case of *Polk* v. *Plummer,* 2 Humph. That case maintains that certain stipulations did not make the bond void as a statutory bond, but are to be treated as surplusage. The bond in that case was held to be statutory."

In *Boughton* v. *State,* 7 Humph., 193, it appeared:

"That Sam Boughton, sheriff, had made default in paying over to the treasurer of the State the State revenue of Stewart county collected for the year 1845. In March, 1844, he was elected sheriff of said county, and at the ensuing April term of the county court of said county he gave bond as collector of the State revenue for the years 1844 and 1845, with the plaintiffs in error as his sureties. In October, 1845, he gave another bond with other sureties, conditioned for the faithful collection and payment of the State revenue for the

year 1845. The judgment of the circuit court was given upon the bond of April, 1844, for the default in paying over the revenue collected for the year 1845. And the question is whether, as embracing the last year, the bond in question was a good statutory bond, subjecting the obligors to the summary remedy of a judgment by motion."

The court held, after reviewing the statutes, that the bond in question, although a good voluntary common-law bond, was not a good statutory bond so far as regards the second year, or that of 1845. *Governor* v. *Allen,* 8 Humph., 177; *Davis* v. *Bratton,* 10 Humph., 179.

We understand this principle in respect of the obligation of a voluntary bond to have been recognized and reaffirmed in *McLean* v. *State,* 8 Heisk., 270-275. In that case the court said:

"Another question is this: The bonds taken in 1868, the first year of the first term, in terms bind the collector and his sureties for the discharge of all duties, and the payment of all moneys collected, or that ought to be collected during the entire term of office, and the bonds of 1870 are in the same terms; and the question is, Are the sureties on the bonds of 1868 liable for the default occurring in 1869 with the sureties upon the bonds executed in the year 1869, or must the judgment for the default of the year 1869 be confined to the bonds of 1869? And the same question arises as to the bonds of 1870 in regard to the default occurring in 1871.

This we regard as a question of some difficulty.   That the bonds in terms bind the obligors to the extent claimed for the plaintiff is not denied, but the argument for the defense is that the law required bonds to be given annually, and only regarded the first bond to cover the taxes for the first year; and, if the bond of the first year in its terms should annex conditions not required by law, and bind the obligors for the taxes of the second year, that the sureties will only be bound to the extent the law required the bond to go, and not for those conditions not required by law, under the principle of the cases of *Polk* v. *Plumber,* 2 Humph., 500, 37 Am. Dec., 566, and *Banks* v. *McDowel,* 1 Cold., 84.   Even upon the principle of *Boughton* v. *State,* 7 Humph., 193, these bonds as to the second year's default are good at common law, and we hold that the distinction between statutory and common law bonds is in this respect now immaterial." *Maddox* v. *Shacklett* (Tenn. Ch.), 36 S. W., 731.   In *Allison* v. *State,* 8 Heisk., 312, it was held:

"A tax collector's bond, reciting an election for two years, and with condition, 'to pay over all taxes by him collected, or which ought to be by him collected, according to law,' binds his sureties for his whole term of office, not simply for the year in which it is given."

In the course of the opinion in that case Judge Freeman said:

"Now, this bond is not the bond conditioned according to the terms of the statute, is not limited to such

taxes as by him are collected, or ought to be collected against the last day of December of that year.   If it had been thus, it would have been a statutory bond, and the recital of the term of office would not in any wise add to the period which the bond by its terms then would have covered.   We must take this as a good common-law bond, and not the bond required by the statute, or conditioned as required."

In *Coons* v. *People,* 76 Ill., 383, it was said:

"Where an officer gives a bond under which he is allowed to receive moneys, make sale of land for taxes, and receive commissions, he and his sureties will be estopped from denying the validity of such bond when sued for a breach of its condition.   It will be obligatory as a common-law undertaking, unless prohibited by statute, or opposed to public policy."

In *United States* v. *Hodson,* 10 Wall., 409 (19 L. Ed., 937), it was said:

"But where it [bond] is voluntarily entered into, and the principal enjoys the benefits which it is intended to secure, and a breach occurs, it is then too late to raise the question of its validity.   The parties are estopped from availing themselves of such a defense.   In such cases there is neither injustice nor hardship in holding that the contract as made is the measure of the rights of the government and of the liability of the obligors."

In *Bank of Brighton* v. *Smith,* 5 Allen (Mass.), 415, Bigelow, C. J., said:

"The rule of law is well settled that a bond given for the faithful performance of official duties, or in pursuance of some requirement of law, may be valid and binding on the parties, although not made with the formalities, or executed in the mode provided by the statute under which it purports to have been given. This rule rests on the principle that, although the instrument may not conform to the special provisions of a statute or regulation in compliance with which the parties executed it, nevertheless it is a contract voluntarily entered into upon a sufficient consideration for a purpose not contrary to law, and therefore it is obligatory on the parties to it in like manner as any other contract or agreement is held valid at common law."

It may be observed that the condition contained both in the revenue and official bond of Walter S. Rainey, to the effect that he will truly and faithfully perform all the duties of the office of circuit court clerk, etc., is a guaranty of the personal honesty of such officer, and was intended to furnish indemnity against any defalcations on his part in accounting for revenue paid into his hands. *Fiala* v. *Aimsworth,* 63 Neb., 4, 88 N. W., 135, 93 Am. St. Rep., 420; *American Bank* v. *Adams,* 12 Pick. (Mass.), 303; *Minor* v. *Mechanics' Bank,* 1 Pet., 46, 7 L. Ed., 47.

We are aware that there is another line of cases which hold that bonds executed in the course of judicial proceedings in excess of the conditions prescribed

by statute are only enforceable to the extent of the statutory requirements.

In *Banks* v. *McDowel,* 1 Cold., 85, it was held:

"An administrator in cases of appeal is not required to give security for a debt or judgment against him. The bond should be conditioned to pay costs and damages alone. If the bonds be in terms to pay the amount found due against the estate, such illegal provision or condition will be rejected and the bond held good for the costs and damages." *Sharp* v. *Pickens,* 4 Cold., 270; *Hutchinson* v. *Fulghum,* 4 Heisk., 557; *Patterson* v. *Gordon,* 3 Tenn., Ch., 22; *Denton* v. *Woods,* 11 Lea, 506.

It may be said generally in all cases that conditions of appeal bonds beyond the requirements of the statute are void, and the bond is enforceable as required by law. *Mason* v. *Smith,* 11 Lea, 71; *Denton* v. *Woods,* 11 Lea, 506; *Ranning* v. *Reeves,* 2 Tenn. Ch., 267.

Where the same rule was applied to attachment bonds: *Mason* v. *Metcalf,* 4 Baxt., 440; *Mason* v. *Anderson & Co.,* 12 Heisk., 38.

It may be said in respect of the last class of cases that the bonds were wholly without consideration, since the parties were entitled to an appeal upon executing a bond for costs and damages as required by the statute. Hence there was no consideration for the superadded conditions, and for that reason such bonds were nonenforceable. In the present case, however, there was a consideration for the bonds executed by Rainey

and the Fidelity Company as his surety. The revenue for which Rainey defaulted went into his hands upon the faith of bonds executed by him in excess of the requirements of the statute, and the surety company was paid a premium for the indemnity guaranteed by it. The bond executed by Rainey was voluntarily executed, upon sufficient consideration, and is clearly enforceable as a common-law bond to the full amount of the penalty prescribed.

We are therefore of opinion that the guaranty company was liable for the full penalty of this bond, and that the chancellor was in error in ordering it canceled after crediting it with the sum of $3,081.82, amount of State and county taxes on litigation, and State taxes for the redemption of property.

We next proceed to inquire if the State is entitled to priority in the collection of its delinquent revenue on the bond of the guaranty company. This question, so far as we are advised by any written opinion of this court, is one of first impression in this State. It is certain there is nothing in the constitution of the State or in any statute which has been called to our attention declaring such priority. There is one instance in which priority in favor of the State is declared, and that is in the distribution of the estates of insolvent decedents.

Section 4090, Shannon's Code, provides:

"In order to ascertain the fund to be distributed

among the creditors, the clerk shall deduct from the whole estate:

"(1)   All fees and commissions due in the administration thereof, including the allowance to the administrator or executor.

"(2)   Claims for funeral expenses.

"(3)   Debts and arrearages due to the State."

This statute was construed in *Field's Ex'r* v. *Wheatley,* 1 Sneed, 351, to mean debts and arrearages due the government or State, in its sovereign capacity, as revenue, fines, forfeitures, penalties, and the like.

The passage of this statute allowing priority to the State in this instance does not necessarily exclude the existence of the priority as derived from the common law.

It is undeniable that by the common law of England the sovereign, by virtue of his prerogative rights, was entitled to priority of payment of debts due him over debts due his subjects.   8 Bacon's Abridgement, tit. "Prerogative," p. 91; 1 Kent's Commentaries (14th Ed.), *257; Blackstone's Commentaries, book 1, p. 240, foot page 210; Id., book 2, star pages 409, 511, foot page 833 (4th Ed.) ; *Giles* v. *Grover,* 9 Bing., 128.

"In nearly all of the States there are statutes giving preference to taxes, rates, and other duties due the State over the debts of the citizens; but in one instance the statute directs that debts due the State shall be paid last.   Whether a State, in the absence of positive enactment, is entitled to the priority claimed

by the crown under the common law, appears to be not well settled, the prevailing opinion, however, is in favor of such priority." Am. and Eng. Enc. of Law, 479.

In Maryland the State is held entitled to priority of payment of a debt due it out of the assets of the estate of a deceased person as a prerogative right from the common law. *Orem* v. *Wrightson* (1878), 51 M'd., 34, 34 Am. Rep., 286; *State* v. *Bank of Maryland* (1834), 6 Gill & J., 228, 26 Am. Dec., 561.

In New Jersey it is held that there is no prerogative right derived from the common law to the State for priority in the payment of debts over other creditors. *Middlesex County Board* v. *State Bank,* 30 N. J. Eq., 311.

The right is also denied in South Carolina. *Klinck* v. *Keckley* (1835), 2 Hill, Eq., 250; *Baxter* v. *Baxter,* 23 S. C., 114.

This question arose in the case of *Glynn County* v. *Brunswick Terminal Company et al.,* supreme court of Georgia, and is reported in 101 Ga., 244, 28 S. E., 604. Simmons, Chief Justice, said:

"It appears from the record that the treasurer of the county of Glynn deposited a certain amount of money of the county of Glynn in the Brunswick State Bank, and that the Brunswick Terminal Company and others were depositors. The bank failed. A creditors' petition was filed for the purpose of winding up the

affairs of the bank and distributing the assets.    The
county of Glynn was made a party, and in its inter-
vention claimed a preference over all other depositors
in the distribution of the assets.

"On the trial of the case the court ruled that the
county had no preference over the other depositors, but
must share *pro rata* with them.   To this ruling the coun-
ty excepted.   According to the rulings of the court the
State, in a contest of this kind, would be entitled to a
preference.   These decisions are based upon our adopt-
ing act of 1874, wherein the common law of England
was made the common law of the State.   By that law
the King of England, by his prerogative right, had a
preference over all his subjects in regard to debts due
the crown.   This court in the case of *Robinson* v. *Bank,*
18 Ga., 65, held that the State, on account of its sover-
eignty, had the same prerogative right in regard to the
collection of debts due it as the King of England had
with respect to debts due the crown, and ruled in that
case that, although the State had a lien junior to that
of one of its citizens, the State's lien had preference.
This ruling has been followed in other cases, notably
that of *Scay* v. *Bank,* 66 Ga., 609.

"While it may be true that the State, on account of
its prerogative right, has this preference, we cannot
hold that the same right applies to the counties of the
State.   If there is such a thing as prerogative right
of preference on the part of the State, it cannot be
divided among the 137 counties of which it is composed.

8 Bac. Abr., under head of 'Prerogative.' We think it safe to hold that the county has no such prerogative right as the State. Not having this right, in order to obtain a preference over the other depositors, it must show some statutory right. We have no statute which gives a county which is a depositor in a bank a lien or preference over other depositors of the same class. It is true there is a statute giving a county a lien for its taxes in preference to others, but a lien for taxes and a lien upon the assets of an insolvent debtor for money deposited stand upon altogether different footings. The lien of the county for taxes as against the property taxed by it (the lien being given by statute) is one thing, and the claimed right of the county to priority over the other creditors in regard to an indebtedness for money received from the county, whether or not that money has been collected from taxes, is another and altogether different thing. In the one case the statute gives the lien for taxes upon the property of the citizen. In the other there is no statute giving any lien. In the absence of any legal right of preference in such cases, the county must stand upon an equal footing with other depositors."

In 1 Kent's Commentaries (14th Ed.), *248, note "b," it is said:

"In Maryland, by statute passed in 1778, the commencement of a suit by the State against a public debtor created a lien on all the lands of the debtor, and a preference over all other creditors, who had not prior

to the commencement of the suit secured a lien by judgment, mortgage or otherwise. *Davidson* v. *Clayland,* 1 Har. & J., 546. The preference in payment of debts was a breach of government prerogative at common law, and it was introduced as such into Maryland. It is the law still when the property of the debtor remains in hand, and there is no lien standing in the way. *State of Maryland* v. *Bank of Maryland,* 6 Gill & J., 205, 26 Am. Dec., 561. In Connecticut the State has a priority of claim against the estate of an insolvent debtor, and State sureties paying the debt have the same privilege. Rev. St. Conn., 1826, 212. The State's preference rests in this country, upon statutes; and the common law gives none over other creditors. *State* v. *Harris,* 2 Bailey (S. C.), 598; *Klinck* v. *Keckley,* 2 Hill, Eq. (S. C.), 256. The common-law prerogative of the King to be paid in preference to all other creditors, is therefore not universally adopted in this country. It prevails in the government of the United States and in Maryland, North Carolina, Indiana, Connecticut, etc., but not in South Carolina. In Georgia, State taxes have preference over all incumbrances whatsoever. *State* v. *Pemberton,* Dud., 15. In Indiana the State has preference over all other creditors, and real and personal estate is bound on behalf of the State from the teste of the first process. Rev. St. 1838, 283."

In *Hoke* v. *Henderson,* 14 N. C., 23, the right of the sovereign to priority of satisfaction out of the goods of the debtor is recognized, unless the debtor's goods

be actually sold under the subject's process before the sovereign's is delivered.

We are of opinion that the prerogative right of the sovereign to receive payment of fines, forfeitures, taxes, and revenue, and such demands as were due it in its sovereign capacity was a part of the common law transmitted to this State from North Carolina, and that the decree of the chancellor was correct in adjudging priority to the State in the collection of its delinquent revenue on this bond.

We are of opinion, however, that this priority does not extend to the counties and municipalities of the State. In *State* v. *Bank of Tenn.*, 5 Baxt., 1, Marion county asserted a claim to priority for a balance due it on account of a deposit in the Bank of Tennessee, but this priority was denied, and it was held that the county stood on an equal footing with other creditors of the bank. *Leeper* v. *State*, 103 Tenn., 528, 53 S. W., 962, 48 L. R. A., 167.

The decree of the chancellor in allowing priority to the county of Davidson and the city of Nashville in the distribution of this fund was therefore erroneous.

It is next assigned as error that the chancellor failed to allow interest on the amount due from the guaranty company from the date of the filing of its bill.

We are of opinion there was no error in the action of the chancellor. The guaranty company is only chargeable with interest from the date of the decree

adjudging liability. *State* v. *Cole,* 13 Lea, 366; *State,*
*ex rel. Walsh,* v. *Blakemore,* 7 Heisk., 657.

It results that the decree of the chancellor must be
reversed in the respects mentioned, and the cause re-
manded for the statement of another account in accord-
ance with the principles herein announced.