[No. 15183.   Department One.   May 14, 1919.]

AETNA CASUALTY & SURETY COMPANY, *formerly the Aetna Accident & Liability Company, Appellant,* v. LOUIS H. MOORE, *State Bank Examiner, Respondent.*[1]

STATES—PRIORITY OF STATE AS DEBTOR—WAIVER—LIQUIDATION BY BANK EXAMINER—STATUTES. Any right to a preference in the payment of claims against an insolvent bank which the state may have by virtue of its sovereignty or the common law of England is lost, where no claim therefor was made by the state prior to the time when the state bank examiner took charge under Rem. Code, §§ 3303-1 to 3303-19, which abolishes receivership and places the administration of insolvent banks in the hands of the state bank examiner; especially in view of the fact that the law authorizing the deposit of state funds in banks makes no provision for a preference by the state.

BANKS AND BANKING (7)—INSOLVENCY—POWERS OF EXAMINERS—PREFERENCE CLAIMS. Under Rem. Code, §§ 3303-1 to 3303-19, abolishing receiverships of insolvent banks and placing the administration in the hands of the state bank examiner, with power to determine the necessity and amount of assessments and to liquidate its affairs, the state cannot claim a preference on assets in the hands of the examiner, especially in view of § 3303-12, providing that, upon complete liquidation, proceeds shall be delivered to the stockholders, and the debtor bank is not revested therewith.

Appeal from a judgment of the superior court for King county, Allen, J., entered August 3, 1918, dismissing an action to recover preferred claims against an insolvent bank, upon sustaining a demurrer to the complaint. Affirmed.

*J. Speed Smith, Henry Elliott, Jr.,* and *James B. Murphy,* for appellant.

*M. M. Richardson* and *Hugh C. Todd (F. C. Reagan,* of counsel), for respondent.

[1]Reported in 181 Pac. 40.

MITCHELL, J.—By the complaint, two alleged causes of action are set up. The first, in substance, is that the plaintiff was and is still engaged in carrying on, in this state, a general surety business; that the Northern Bank & Trust Company was, on and prior to January 30, 1917, conducting in the city of Seattle a general banking business; that the bank was a regularly designated depositary for the funds of the state of Washington; that the plaintiff became surety on the statutory bond of the bank as such depositary in the sum of $5,000; that the bond was duly approved by the state board of finance and in force on January 30, 1917; that, on January 30, 1917, the bank became insolvent and the defendant, as state bank examiner, took charge of the affairs of the bank and proceeded to close up its business as required by law; that, when it failed, there was on deposit with the bank state funds amounting to the sum of $30,000; that, after the insolvency of the bank was established and it was found to be unable to pay the state, the state made demand upon the plaintiff for its proportionate share of said deposits (there being other bonds given to protect the state), and the plaintiff, upon demand of the state, paid to it on February 24, 1917, in fulfillment of its surety obligation, the sum of $4,292.86; that the state thereupon assigned to the plaintiff its claim against the bank; that plaintiff thereafter filed with the state bank examiner having charge of the affairs of said bank a claim in which it claimed and demanded a prior right of payment over the general creditors of the bank upon the theory that the state, by reason of its sovereignty, possessed a prior right of payment, and that the plaintiff, upon reimbursing the state, became subrogated and succeeded to the right of the state to be first paid out of the funds of the bank before the general creditors received any dividend; and that the state bank examiner

rejected the claim of plaintiff as a preferred claim and allowed it only as a common one.

The second cause of action was in substantially the same form as the first, differing in that the plaintiff alleged that it became surety for the bank upon certain bonds executed and delivered to the treasurer of the city of Seattle, indemnifying the city against loss on account of deposits made by it with said bank; and that, after the bank was unable to repay the city moneys deposited with it, upon demand of the city, the plaintiff paid to the city, as surety upon said bond and not otherwise, the sum of $25,441.81, and that it filed a similar preferred claim with the defendant, which claim was rejected as such and allowed only as a common claim. The prayer of the complaint is that the claims be established as preferred claims.

The defendant interposed a general demurrer to each alleged cause of action. The court sustained the demurrer. Plaintiff elected to stand upon its complaint, and the court thereupon entered a judgment dismissing the complaint with costs, from which this appeal has been taken.

The questions of law involved are whether or not the state of Washington, by reason of its sovereignty and its qualified adoption of the common law, succeeded to and possesses a right corresponding to the prerogative of the crown of England to be first paid that was enforceable in this case; and if so, was the appellant subrogated to this preference right of payment upon satisfying the debts owing to, and taking assignments from, the state and the city? Of course it is admitted by appellant that the office of king and all prerogatives purely personal to him as such, being repugnant to our form of government, have been abrogated. But it is insisted that his sovereignty, powers, functions and duties, in so far as they relate to the maintenance of

civil government, are substituted by and devolve upon the people of the state; that they are not in conflict with any of our written law nor incompatible with our institutions of society; and that, inasmuch as claims or moneys due the king for the support and maintenance of the government, from whatever sources derived, were preferred over the claims of others, therefore, it follows such preference became and continues to be the law of this state, because of an act of the territorial legislature of 1863, now Rem. Code, § 143, which provides:

"The common law, so far as it is not inconsistent with the constitution and laws of the United States, or of the state of Washington, nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all courts of this state."

One of the prerogatives of sovereignty of the crown of England was the right to have its debts paid as against its subjects. Many of the American states have held that this attribute of sovereignty exists and is applicable here by virtue of constitutional law or legislative enactments adopting the common law, while other states have expressed and hold the opposite view. Among those declaring or favoring the rule, and collecting the cases, English and American, on both sides of the question, are *State v. Bank of Maryland,* 6 G. & J. (Md.), 205, 26 Am. Dec. 561; *In re Carnegie Trust Co.,* 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260; *United States Fidelity & Guaranty Co. v. Borough Bank of Brooklyn,* 213 N. Y. 628, 107 N. E. 1086; *Hoke v. Henderson,* 14 N. C. (3 Dev.) 12; and the recent case of *Aetna Accident & Liability Co. v. Miller,* 54 Mont. 377, 170 Pac. 760, L. R. A. 1918C 954.

Among those to the contrary, and collecting authorities on both sides, are *Freeholders of Middlesex County v. State Bank at New Brunswick,* 29 N. J. Eq. 268, af-

firmed by the court of errors and appeals, 30 N. J. Eq. 311.; *Potter v. Fidelity & Deposit Co. of Maryland,* 101 Miss. 823, 58 South. 713; *Brown v. American Bonding Co.,* 210 Fed. 844, by the Circuit Court of Appeals for Montana prior to the case of *Aetna Accident & Liability Co. v. Miller, supra*; and the recent case of *Commissioner of Banking v. Chelsea Savings Bank,* 161 Mich. 691, 125 N. W. 424, affirmed on rehearing, 161 Mich. 704, 127 N. W. 351.

We may and shall assume, without deciding, that the common law in this respect is in force in this state, and yet we think the state or its assignee is not entitled to the preference claimed in this action, for the reason it was lost prior to the state or appellant, its assignee, making any attempt to assert it, as we shall later see.

In the case of *State v. Bank of Maryland,* 6 G. & J. (Md.) 205, 227, 26 Am. Dec. 561, an assignment case, in which the court confessed and declared the common law rule of priority of payment to the sovereign, it was said:

"That right in England is enforced by the process in the writ of extent in chief, or in aid, according to circumstances, and may be here, by proceedings known to our courts. But in either case, to make it available, the proceeding must be resorted to, before other vested rights to the property sought to be subjected to the claim are acquired."

Then, after discussing the English cases showing how the right may be lost, the court said (p. 229):

"We have endeavored to show that this is a fair and *bona fide* assignment for a valuable consideration, and passed the property from the bank, and beyond its power or control. If so, and a similar assignment in England has the effect to protect the property against the king's extent, and to defeat his priority (as we have  seen it does), it has equally the effect here to

protect the property in the hands of the trustees against the common law priority of the state.''

In the case of *Freeholders of Middlesex County v. State Bank at New Brunswick,* 29 N. J. Eq. 268, a receivership case, it was said:

"My judgment is, the state does not possess the prerogative claimed. But if my examination of the question had led me to a different conclusion, still, I think, the claim could not be sustained. The authorities of both countries unanimously agree that the right dies the moment the debtor's title is divested. No claim was made by the state in this case until after a receiver had been appointed. *That appointment invested him with full power to sell, assign and convey all the property of the corporation. . . . No act by the corporation is necessary to complete either the title of the receiver or that of his purchaser.* Unlike proceedings under bankrupt laws, no assignment by the debtor or commissioners is required. *Title is divested by force of law, and such divestiture is perfect and absolute.*''

The case of *State v. First State Bank of Las Cruces,* 22 N. M. 661, 167 Pac. 3, L. R. A. 1918A 394, was a case in which the state claimed a preference right to moneys in the hands of a receiver appointed to wind up the affairs of an insolvent bank in which the state had money on deposit. The court, assuming, without deciding, that the common law right of preference in favor of sovereignty existed, held that, upon the appointment of the receiver for an insolvent corporation, title to its property is divested and goes to the receiver, and that, therefore, when a receiver has been appointed for an insolvent state bank, the state is not entitled to a preference over the creditors.

In *State v. Foster,* 5 Wyo. 199, 38 Pac. 926, 63 Am. St. 47, 29 L. R. A. 226, the supreme court of Wyoming, in speaking of this prerogative, said:

"We do not care to decide this point, as it is unnecessary to do so. The assignment of the insolvent's property, both under common law and under our statute, passed the title, and no process could thereafter run against the property, *either that of the state or the citizen,* and the preference or prior right, if any existed, is thereby defeated."

The case of *Commissioner of Banking v. Chelsea Savings Bank,* 161 Mich. 691, 125 N. W. 424, 127 N. W. 351, was one wherein the state, through its commissioner of banking, claimed a preference because of a deposit on hand at the time of the failure of the bank. The commissioner of banking, after discovering the insolvency of the bank, had procured the appointment of a receiver under a law of Michigan which was similar, in this respect, to the law of this state as it existed prior to the act of 1915. In the opinion the court said:

"*Without treating the action of the banking commissioner in closing the Chelsea bank as the precise legal equivalent of a fair and bona fide assignment by the bank of its assets for a valuable consideration, it is nevertheless true that the proceedings taken passed all the property of the bank beyond its power or control. This, being the result of enforcement of the state law, should have an effect equal to an assignment for benefit of all creditors.* Such an assignment could not be avoided by the crown nor could it lay claim to goods seized by the sheriff on *fieri facias* and sold. *King v. Lee,* 6 Price, 369; *Giles v. Grover,* 1 Cl. & Fin. 72; *King v. Watson,* 3 Price, 6; 2 Tidd's Practice, pp. 1098, 1099; Chitty's Prerogative of the Crown, 281, 284, 285; *State v. Bank of Maryland,* 6 Gill & J. (Md.) 205 (26 Am. Dec. 561). The principle proceeded upon seems to be that the right of priority of the sovereign attaches, as does the right of any lienor, *only upon seizure under or enforcement of the proper writ. We do not hesitate to say that, assuming the right of priority contended for to exist in this state, the courts, in the absence of*

*any assertion of the right by the state, and after the debtor has been divested of all control of its property in proceedings authorized by and following the statutes of the state, should not, sua sponte, assert the right in favor of a guarantor of the debtor."*

However, as appellant rightly contends, this case does not arise upon receivership proceedings, nor upon an assignment by the bank, but upon the law of 1915, Laws 1915, p. 279 (Rem. Code, §§ 3303-1 to 3303-19), relating to the administration of banks and trust companies by the state bank examiner and the act of the bank examiner in taking charge of the affairs and property of the bank thereunder. The act of 1915 is a comprehensive one, and provides in detail for the powers and duties of the bank examiner. By § 10 (Id., § 3303-10) it abolishes the power of the courts to appoint receivers (authorized and directed by the former law), and prohibits the making of any deed of assignment for the benefit of creditors, except upon notice to the state bank examiner, unless in case of urgent necessity it becomes, in the judgment of the court, necessary to do so; in which cases the bank examiner may, within five days after service of such notice upon him, take possession of such bank or trust company, whereupon no further proceedings shall be had as to the appointment of a receiver or under the deed of assignment; and, in the event a receiver has already been appointed or the assignee commenced to discharge his duties, the appointment shall be vacated or the assignee removed and the state bank examiner proceed to administer the assets of the bank or trust company. The bank examiner is given power without the aid of any judicial inquiry, to determine both the necessity for and the amount of assessments on account of the superadded liability of the stockholders and to enforce collections of the same. *Hanson v. Soderberg,* 105 Wash. 255,

177 Pac. 827. By § 3 of the act, he is given dominion over all the property and business of the bank, with power to liquidate its affairs; and under the supervision of the superior court, he may compound bad or doubtful debts due, and with the approval of the court sell all real and personal property.

"And the state bank examiner, upon the terms of sale or compromise directed by the court, shall execute and deliver to the purchaser of such real or personal property such deeds or instruments as shall be necessary to evidence the passing of the title; . . ." Rem. Code, § 3303-3.

Keeping in mind the rule that all statutes of this nature ought to receive a fair and reasonable interpretation, according to the just import of their terms, we necessarily reach the same conclusion as that expressed in the case of *Commissioner of Banking v. Chelsea Savings Bank, supra,* viz:

"Without treating the action of the banking commissioner in closing the Chelsea bank as the precise legal equivalent of a fair and *bona fide* assignment by the bank of its assets for a valuable consideration, it is nevertheless true that the proceedings taken passed all the property of the bank beyond its power or control. This, being the result of enforcement of the state law, should have an effect equal to an assignment for benefit of all creditors. Such an assignment could not be avoided by the crown . . ."

There is this additional consideration which deserves notice: that the statute authorizing the deposit of state funds in banks was enacted prior to the bank examiner act of 1915, which contains no provision for retaining out of the funds of the insolvent bank moneys due the state in preference to other creditors of the bank. Our views concerning the relations of the bank examiner to the property and the loss of dominion over it by the

bank is further strengthened by subsequent sections of the act of 1915, to the effect that after the bank examiner shall have paid the claims of creditors and depositors and the expenses of administration, as provided for in § 11 (Id., § 3303-11) of the law, he shall call a meeting of the stockholders who shall determine if the bank examiner shall continue to wind up the affairs of the bank or if an agent, to be selected by them, shall complete the liquidation. In the event the latter plan is chosen, § 12 of the act provides:

"The state bank examiner shall *transfer* to such agent or agents all the undivided or uncollected or other assets of such bank or trust company then remaining in his hands; and upon such *transfer and delivery* the said bank examiner shall be discharged . . . ." Rem. Code, § 3303-12.

Again, the statute provides that, whether the further liquidation be completed by the bank examiner or an agent, the proceeds shall be delivered to the *stockholders* in proportion to their several holdings, under directions of the court, thus presenting a situation, as shown by the whole act, by which the title to the property taken by the bank examiner, or the proceeds thereof, by force of the law never becomes revested in the *bank,* the former debtor of the sovereign. Thus, it appears we must of necessity reach a different conclusion in this case than that arrived at on this point in the receivership case of *Aetna Accident & Liability Co. v. Miller, supra,* so much relied on by appellant, the doctrine of which, in declining to interrupt enforcement of the preference admitted to exist in favor of the state, was expressly declared to rest in part upon the theoretical possibility that the insolvent debtor might regain control of the property.

Certainly, if there is no cause of action stated as to

the deposit by the state, there is none on account of that made by the city of Seattle.

For the reasons stated, the judgment is affirmed.

CHADWICK, C. J., TOLMAN, MACKINTOSH, and MAIN, JJ., concur.