AMERICAN SURETY COMPANY OF NEW YORK v. FRANK E.
PEARSON, AS SUPERINTENDENT OF BANKS OF THE
STATE OF MINNESOTA, AND ANOTHER.[1]

July 16, 1920.

No. 21,845.

**Insolvent bank — state of Minnesota a preferred creditor.**

Following State v. Bell, 64 Minn. 400, it is *held* that, notwithstanding
the changes in the statutory law which have taken place since that
case was decided, the state is a preferred creditor in proceedings to
wind up an insolvent bank in which state funds were deposited.

Action in the district court for Ramsey county by the American Surety
Company of New York for a decree adjudging plaintiff's claim against
the Marine Mills State Bank to be a preferred claim. From the order,
Brill, J., sustaining defendants' demurrer to the complaint, plaintiff ap-
pealed. Reversed.

*Fowler, Schmitt, Carlson & Furber,* for appellant.

*Clifford L. Hilton,* Attorney General, and *Rollin L. Smith,* Assistant
Attorney General, for the state.

*Morphy, Bradford & Cummins,* for respondents.

LEES, C.

On February 17, 1919, the superintendent of banks took possession of
the property of the Marine Mills State Bank on the ground that it was
in an unsafe condition to transact business and proceeded to wind it up.
Prior thereto, the state treasurer had deposited state funds in the bank
amounting to $3,305.48. Plaintiff was surety on the bond given by the
bank to the state to secure the repayment of such funds. In response to
the demand of the state treasurer, plaintiff paid the amount of the de-
posit to the state and filed its claim with the superintendent of banks,
asking that it be allowed as a preferred claim. It was allowed as a gen-
eral claim, but its allowance as a preferred cliam was refused. There-

[1] Reported in 178 N. W. 817.

upon plaintiff brought this action for the purpose of having the claim allowed and paid as a preferred claim. A demurrer to the complaint was sustained and plaintiff appealed.

It is conceded that plaintiff has been subrogated to the rights of the state as against other creditors of the bank, and that, if the claim of the state was a preferred claim, the order sustaining the demurrer must be reversed. The sole question, therefore, is whether the state is a preferred creditor of a bank in which state funds are deposited.

In State v. Bell, 64 Minn. 400, 67 N. W. 212, decided in 1896, in an action to wind up an insolvent bank, it was held that the state is a preferred creditor. Defendants contend that subsequent legislation has deprived the state of the preference it enjoyed under the statutes in effect when the Bell case was decided.

The history of the legislation on the subject is as follows: Section 32, c. 6, G. S. 1866, reads:

"If any treasurer, or other person indebted to the state, becomes insolvent, the debt of the state shall be paid first of all debts, notwithstanding any attachment against his effects, or any voluntary assignment thereof to pay debts, or for other purposes."

This section appears in the Statutes of 1878 as section 41 of chapter 6. Section 37 of the same chapter provided that the state treasurer should select one or more banks located in the state capital in which state funds should be deposited, the bank or banks so selected to give a bond to the treasurer for the use of the state to secure the repayment of the funds deposited. The first of the two sections appears in the Statutes of 1894 as section 348, and the second, with certain minor changes, as subdivision 2 of section 344.

By chapter 140, p. 175, Laws 1901, a board of deposit was created to have charge of the deposit of state funds and the selection of banks as depositories of such funds. Section 3 of the act provided that the state should be a preferred creditor, both as to the depository and its sureties, and that the treasurer should not be liable for the safe keeping of money so deposited. In the revision of 1905, section 348, G. S. 1894, and the preference clause in section 3, c. 140, p. 176, Laws 1901, were dropped out. The statute now in effect is chapter 179, p. 191, Laws 1909, which,

like the revision of 1905, has no provision specifically making the state a preferred creditor of an insolvent bank.

It was the view of the learned trial court that the revision and the act of 1909 have taken away the right to a preference which the state theretofore had.

When the Bell case was decided, in addition to the statutes then in effect to which we have already called attention, there were the following statutory provisions: Section 5898, G. S. 1894, providing for the distribution of the property of all insolvent corporations and giving the state a preference as to debts due it, and section 4251, G. S. 1894, providing that upon the distribution of funds received by an assignee for the benefit of creditors, or a receiver under the insolvent law of 1881, the state should have a preference. These two sections are still in force and appear as sections 6634 and 8333, G. S. 1913.

In the Bell case, sections 348, 4234, 4251, 5898 and 5908, G. S. 1894, were referred to as relevant to the question under consideration. After quoting section 348, the court referred to section 5898 and said: "This clearly makes the state a preferred creditor in proceedings under chapter 76." In refusing to distinguish between banking corporations and other corporations when proceedings under chapter 76 were instituted, it said:

"We cannot split up and dissect chapter 76 in this manner. * * * It is clear that by the plain words of the statute the state is a preferred creditor. That this is the clear policy of the legislation of this state appears further from sections 4234 and 4251."

The provisions of section 5898, in substance, though not in form, are now embodied in section 6634, G. S. 1913. The original section was part of chapter 76, which contained the statutory provisions relating to the proceedings to be had upon the sequestration of the property of insolvent corporations at the instance of creditors and the distribution of the proceeds of such property among such creditors. The only provision of the statute in force when the Bell case was decided, which has since been repealed, is section 348. In its place we now have the statute relating to the deposit of state funds—sections 91-99, G. S. 1913, as amended by chapter 396, p. 561, Laws 1917, and chapter 419, p. 489, Laws 1919. It is to be noted that the decision in the Bell case was not made to rest on

section 348, for, as we read the case, the court considered that section 5898 required it to hold that the state was a preferred creditor in proceedings to wind up insolvent banks. If we are right in this, it would seem that the enactment of chapter 140, p. 175, Laws 1901, expressly declaring that the state should be a preferred creditor and the omission of this declaration in the revision of 1905 and in chapter 179, p. 191, Laws 1909, are of no particular significance. It is true that the act of 1909 makes express provision for the proceedings to be taken in liquidating an insolvent bank, and that it does not expressly provide that the state shall be preferred in the distribution of the bank's fund. Indeed, it does not give a preference to any of the bank's creditors. Neither debts due to the United States or the state, nor taxes, nor wages to clerks or laborers, are mentioned, although it has always been the policy of the legislature to recognize such debts as preferred over others, when the debtor has become insolvent.

Has the legislature departed from the policy established as early as the organization of the state? We are reluctant to impute to it a deliberate intent to deprive the state of a valuable right for no apparent reason. We should suppose that, if it had been proposed to enact a statute declaring that the state should have no preference in case a bank in which its funds were deposited became insolvent, the proposition would have been received with little or no favor. If the state has lost its right to a preference, it must be attributed to inadvertence on the part of the legislature in framing the present statutes, rather than to deliberate intention. It is asserted that the Bell case is no longer authority, because the decision turned on chapter 76, G. S. 1894, which was repealed by section 5531, R. L. 1905, and, therefore, the foundation for the rule laid down in the case is gone. But the field occupied by chapter 76 was covered by the 1905 revision (sections 3169-3190), and one of these sections (3173) contains all of the essential features of section 5898 of chapter 76. It is further argued that we must consider other legislation in this connection, and that by dropping out the preference clause in chapter 140, p. 175, Laws 1901, and by enacting chapter 179, p. 191, Laws 1909, it appears that the legislature intended that the state should have no security for the return of its money deposited in a bank, except the bond the bank

is required to give, and, further, that in enforcing its claim against an insolvent bank no creditor can now resort to the general statutes relating to the liquidation of insolvent corporations, but is confined solely to the remedies provided by the act of 1909 and the amendments thereto.

As to the first point, we do not agree with counsel for defendant. The act of 1901 added nothing to the rights of the state as declared in the Bell case, hence it would have taken nothing away had it been entirely repealed.

There is more room for argument upon the second point. The act of 1909 does provide for new methods of winding up insolvent banks. Possibly it is so complete in itself that it does not require the aid of other statutory provisions to make it workable in practice. But one of its purposes is to provide for the distribution of the funds of an insolvent bank among its creditors. After making provision for the payment of dividends to creditors, the act proceeds as follows:

"Such dividends to be paid to such persons and in such amounts and upon such notice as may be directed by the said district court."

We are of the opinion that the court is to be guided by section 6634, G. S. 1913, in directing how payments shall be made. That section provides that the property of an insolvent corporation may be impounded by the court, converted into money by a receiver, and the proceeds distributed among creditors under the court's direction. The act of 1909 provided that the property of an insolvent or unsafe bank might be impounded by the public examiner who should liquidate and distribute its assets under the direction of the court. The only difference is that in one case the court appoints the receiver, while in the other the public examiner was ex officio the receiver. We perceive no valid reason for holding that there is a difference in the order in which creditors should be paid in either case.

We reach the conclusion that State v. Bell, supra, controls the decision of the present case, and that the demurrer to the complaint should have been overruled. Consideration of the question of whether the state, as sovereign, is entitled to priority over other creditors is rendered unnecessary by the construction we have placed upon the statutes.

Order reversed.