UNITED STATES FIDELITY & GUARANTY COMPANY v.
RUSSELL D. RATHBUN AND ANOTHER.[1]

July 18, 1924.

No. 24,011.

**Bond of depository of state funds continuing obligation.**
    1. The bond, executed by plaintiff to the state upon its principal, a state bank, being designated as a depository of state funds, was a continuing obligation, and not one renewed each time the promised annual premium was paid.

**Surety's right of subrogation not affected by subsequent legislation.**
    2. The right of plaintiff to be subrogated to the preference given the state, in case of insolvency of the depository, attached when the bond was given and the relation of surety was assumed, and cannot be affected by subsequent legislation enacted prior to a termination of the bond.

Action in the district court for Ramsey county to have plaintiff's claim of $6,571.84 adjudged preferred against defendant Northern State Bank of Minneapolis and that defendant Rathbun, as state superintendent of banks, be ordered to pay the claim with interest before paying the general debts of the bank. Plaintiff's motion for judgment on the pleadings was granted by Boerner, J., who, pursuant to two stipulations of the parties, made findings of fact and conclusions of law. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*F. B. Wright,* Special Attorney, *Clifford L. Hilton,* Attorney General, and *Rollin L. Smith,* Assistant Attorney General, for appellants.

*Denegre, McDermott, Stearns & Weeks,* for respondent.

[1]Reported in 199 N. W. 561.

HOLT, J.

Defendants appeal from the order denying their motion for a new trial. The facts were stipulated, hence the appeal challenges only the legal conclusion directing judgment for plaintiff.

The facts necessary to be stated are these: The defendant bank was designated a depository for state funds in December, 1919, and plaintiff executed its bond to the state conditioned that its principal, the bank, should pay over to the state treasurer, whenever demanded, all moneys belonging to the state which theretofore had been or thereafter might be deposited with the bank. In the written application for the bond the bank represented to plaintiff that a deposit by the state created a preferred lien against its assets, and that the date of the termination of the bond was indefinite. The bank also therein agreed, among other things, to pay the premium annually in advance thereafter "until said company shall, in the manner provided by law, be discharged or released from any and all responsibility under said bond and all matters arising therefrom, and proper legal evidence of such discharge or release be served on said company." In March, 1922, the bank became insolvent and the superintendent of banks took charge, at which time the state had on deposit $6,571.84. Thereafter the state treasurer, unable to obtain payment from the depository, demanded and received the amount from plaintiff which filed a claim therefor with the defendant Rathbun, asking that it be allowed as a preferred claim against the assets of the bank. It was allowed as a general claim only, and this action was instituted to have it adjudged preferred. Plaintiff prevailed.

Appellants contend that the bond was not a continuing contract, but one renewed each year as the stipulated annual premium was paid; and hence, at the time the last premium was paid, in November, 1921, chapter 518, p. 973, Laws 1921, imported into the terms of the bond the provision that where the state receives the amount of its claim against an insolvent depository from the surety "the latter shall not, by reason thereof, be subrogated to the claim of the state against the assets of the insolvent depository as a preferred creditor." Prior to the enactment of the provision quoted,

the surety, paying the state's claim against such a depository, was held subrogated to the preference the then existing statutes gave the state. State v. Bell, 64 Minn. 400, 67 N. W. 212; American Surety Co. v. Pearson, 146 Minn. 342, 178 N. W. 817. Therefore, it is necessary for appellants to establish that there was a new contract or a renewal of the bond in November, 1921, when the annual premium was paid, so that the provision of said chapter 518, which took effect the previous April, may be read into and form a part of the contract. We think the facts do not so permit.

The bank applied in writing for a continuing bond. The one given is not for any definite period. In the application the bank promised and agreed to pay premiums annually, but the nonpayment does not terminate the bond. Neither in the application nor in the bond is there any provision at all similar to the one contained in the policy involved in Steele v. Great Eastern C. & I. Co. 158 Minn. 160, 197 N. W. 101, a case upon which appellants rely. There the premium paid carried the risk up to a stated time and no longer. Not so here, where carrying the risk does not depend upon the payment of the premium but upon the promise to do so. It is much clearer that this is a continuing bond, than the one so held in Pearson v. United States F. & G. Co. 138 Minn. 240, 164 N. W. 919. It is of no significance that the manager or a clerk, in receipting for the annual premium, or in notifying the insurance agency of the bank when a charge against it for such premium was made, stated that the bond was renewed. The bond did not provide for renewals. The application called for a continuing bond, and it was of the utmost importance to the state that it should be so, and not be subject to a termination by some act or default of the depository of which the obligee in the bond would have no notice.

Since subrogation is not dependent on contract, but a creature of equity, it may be claimed that the right thereto does not arise until the surety pays the obligation of the principal, and therefore a statute passed after the bond was given, but before payment, affects the right. We think this is not so. Although subrogation is not based upon contract, it is an equitable right firmly established. Lord Eldon in Craythorne v. Swinburne, 14 Ves. Jr. Ch. 160, ap-

proves of the basis for asserting the right of subrogation thus: "That, after that principle of equity has been universally acknowledged, then persons, acting under circumstances, to which it applies, may properly be said to act under the head of contract, implied from the universality of that principle." But whether subrogation be regarded as wholly a creature of equity or so universally a recognized principle of jurisprudence that it may be said that whenever the relation of principal and surety is assumed subrogation becomes a quasi obligation thereof, it is well established that the right relates back to and attaches when the contract of suretyship is made. In McArthur v. Martin, 23 Minn. 74, it was said: "The right of subrogation and the equitable assignment relate to the date of the suretyship, as against the principal and those claiming under him." This is reiterated in National Surety Co. v. Berggren, 126 Minn. 188, 148 N. W. 55. And authorities elsewhere are to the same effect. Prairie State Bank v. United States, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. ed. 412; Knighton v. Curry, 62 Ala. 404; Nally v. Long, 56 Md. 567; Furnold v. Bank, 44 Mo. 336. Cases are collected in the exhaustive note to Nelson v. Webster, 72 Neb. 332, 100 N. W. 411, 68 L. R. A. 513, 117 Am. St. 799.

In Knighton v. Curry, supra, the statute made the government's claim against a tax collector a lien upon his property, and his surety who had paid the government was subrogated to its right of lien, the court saying: "The statute subjecting the property of a tax collector to a lien for any default he may commit, the lien attaching on the execution of his official bond, is of the same dignity it would be, if in express words it was written as a stipulation of the bond. If so written, the bond would only repeat and declare its legal effect and operation. And if so written, in the absence of the statute, it would operate as an equitable mortgage, and as such a court of equity would enforce it."

So in the case at bar, when the bond was given and the bank became a depository the state acquired a preferred lien or claim on the assets of the bank, that right also attached as to the surety as if written into the bond, so that, in the event of a default on the part of the bank, the surety upon making good the default succeeded to

the position occupied by the state. We hold that it was not within the power of the legislature to destroy this right of subrogation which attached when the bond was given and continued in force until the bond terminated.

The court's conclusion of law is right and the order is affirmed.