NORTH CAROLINA CORPORATION COMMISSION v. CITIZENS BANK AND TRUST COMPANY; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, PETITIONER, v. LOUIS J. POISSON AND NORMAN C. SHEPARD, RECEIVERS.

(Filed 6 April, 1927.)

1. **States—Government — Sovereign Powers — Prerogative — Statutes— Banks—Receivers—Depositors—Debtor and Creditor — Priority of State's Claim.**

The English common law, giving a debt due to the sovereign a preference to the debts due to others, is abrogated by our statute, and is not in force in North Carolina, as applied to a debt due to the State. C. S., 970.

33—193

**2. Same—Principal and Surety—Indemnity Bonds—Equity — Subrogation.**

Where the State Treasurer has money on deposit in a bank that has since become insolvent, and in a receiver's hands, and the State has transferred all of its rights to a surety on an indemnity bond the Treasurer has required from the bank, the surety, on paying the State deposit to the Treasurer, cannot acquire by subrogation a priority of payment over the general depositors or creditors of the defunct bank, as no such right existed in the favor of the sovereign State, especially, as in this case, the State Treasurer had not asserted it before the appointment of the receiver.

STACY, C. J., took no part in the consideration or decision of this case.

APPEAL by the Fidelity and Deposit Company of Maryland, intervening petitioner, from a judgment of *Grady, J.,* given on 14 December, 1926, denying the relief prayed. The petitioner asks that it be subrogated to all the rights, equities and remedies of the State Treasurer and given priority of payment out of the effects of the insolvent Citizens Bank and Trust Company, which it is contended the State had by reason of its sovereignty. These are the agreed facts:

1. That the Citizens Bank and Trust Company was a banking corporation under the laws of the State of North Carolina, and that on or about 15 November, 1924, the said bank was closed by an order of the North Carolina Corporation Commission, and thereafter temporary receivers were appointed by an order entered in the above-entitled cause instituted for the purpose of appointment of receivers, and that on or about 18 December, 1924, these defendants were duly appointed permanent receivers in an order entered in the said cause, and have qualified according to law and are now acting in that capacity.

2. That the Citizens Bank and Trust Company was a duly designated depository for State funds, and at the time of the closing of the Citizens Bank and Trust Company in November, 1924, there was on deposit in the name of Benjamin R. Lacy, Treasurer of the State of North Carolina, $47,619.68; that the said sum of $47,619.68 was a general deposit and checking account of the Treasurer of the State of North Carolina, but there was on hand at the closing of the said bank less than $1,000 in cash.

3. That the Citizens Bank and Trust Company was required by the Treasurer of the State of North Carolina to file an indemnity bond in the sum of $50,000 for the protection of the said Treasurer because of said deposits, and that the said bond was furnished by the Citizens Bank and Trust Company with the Fidelity and Deposit Company of Maryland as surety.

4. That the Citizens Bank and Trust Company applied to the Fidelity and Deposit Company of Maryland for the indemnity bond required by the Treasurer of the State of North Carolina, and before signing the

said bond as surety, the Fidelity and Deposit Company of Maryland, by examination and otherwise, satisfied itself of the financial responsibility of the Citizens Bank and Trust Company, and thereupon executed the said indemnity bond conditioned as aforesaid for the protection of the Treasurer of the State of North Carolina, the Fidelity and Deposit Company of Maryland charging for the execution of the said bond as surety the usual premium charged for indemnity bonds of like amount, and no allowance was made in the premium so charged because the bond was executed by the Citizens Bank and Trust Company for the indemnification of the Treasurer of the State of North Carolina because of deposits in said bank.

5. That at the time of the closing of the bank in November, 1924, and at the date of the appointment of temporary receivers by an order of court thereafter, and the appointment of permanent receivers on 18 December, 1924, there had been no claim made by the State of North Carolina for the repayment of its deposit, nor had any action been taken seeking to enforce priority rights in the payment thereof before the payments to other depositors and creditors of said bank, and the Fidelity and Deposit Company made no demand nor took any action seeking to enforce such priority before the filing of the petition herein on or about the ........ day of April, 1925.

6. That Benjamin R. Lacy, Treasurer of the State of North Carolina, called upon the Fidelity and Deposit Company of Maryland to perform its obligations in accordance with the terms of the said bond, and that thereafter on or about 20 March, 1925, the Fidelity and Deposit Company of Maryland did pay to the said Benjamin R. Lacy, Treasurer of the State of North Carolina, in performance of the terms of the said bond, the principal sum of $47,619.68, together with accrued interest of $708.47; and the said Benjamin R. Lacy, Treasurer of the State of North Carolina, did on or about the said date assign the said deposits in the said bank, together with all rights, equities and remedies growing out of the same, to the Fidelity and Deposit Company of Maryland.

The condition of the indemnity bond was as follows:

"Now, the condition of the above obligation is such, that if the above bound, the Citizens Bank and Trust Company of Wilmington, North Carolina, shall well and faithfully pay over upon demand all moneys belonging to said Benjamin R. Lacy, personally or as treasurer, or to those to whom he may, from time to time, personally or as treasurer, by check or draft or bill of exchange, direct payment to be made, all moneys which said Benjamin R. Lacy may, either personally or as Treasurer of the State of North Carolina, deposit with said the Citizens Bank and Trust Company, of Wilmington, N. C., which may in any manner come into its custody or possession, while acting as said

CORPORATION COMMISSION *v.* TRUST CO.; DEPOSIT CO. *v.* POISSON.

State depository, then this obligation to be void; otherwise to remain in full force and effect."

The Treasurer's assignment to the petitioner was in these words:

"Now, therefore, for and in consideration of the premises, and in the further consideration of $48,328.15, paid to the party of the first part by the party of the second part, the receipt of which is hereby acknowledged, the said party of the first part has transferred, assigned and set over, and by these presents does transfer, assign and set over to the party of the second part, its successors and assigns, all of the said deposits hereinbefore referred to, together with all rights, equities and remedies growing out of said deposits, by reason of the contractual relations between the party of the first part and the said Citizens Bank and Trust Company, but without abridgment or limitation of any rights, equities or remedies which the party of the second part may have independent of this agreement, and which it could have enforced by virtue of law if this agreement had not been made."

Judge Grady was of opinion that the petitioner was not entitled to have its claim filed with the receivers of the insolvent bank as a preference, the deposits being on open account, and that the State has no priority as an attribute of sovereignty in the collection of its debts; furthermore, that the receivers having been appointed and qualified before any claim was made or any proceeding was instituted took the assignment of the assets of the bank free from any lawful claim of priority. Thereupon it was adjudged that the petition be dismissed and that the receivers accept the petitioner's claim against the assets of the bank as one unsecured, to share pro rata with other general claims in the distribution of the bank's assets.

The intervening petitioner excepted and appealed.

*Rountree & Carr for appellant.*
*Ed S. Abell and Norman C. Shepard for appellee.*

ADAMS, J. The appeal presents for review the ruling of the trial court on these two questions: 1. Under the principles of the common law has the State, by reason of its sovereignty, the prerogative right to prefer its claim over the claims of other like depositors, for its deposits made on open account in a bank which has become insolvent? 2. If so, is the appellant, upon paying the amount due the State by the insolvent bank, entitled to be subrogated to the preferred rights of the State? The second question need not be considered if the first is answered in the negative.

Since the right, if existent, is derived by the State from the common law, we may first inquire into its origin and into the theory upon which it is founded. In reference to the royal prerogative, Coke says: "As

to the third protection *cum clausula volumus,* the king by his prerogative regularly is to be preferred in payment of his duty or debt by his debtor before any subject, although the king's debt or duty be the latter; and the reason hereof is, for that *thesaurus regis est fundamentum belli, et firmamentum pacis.* And thereupon the law gave the king remedy by writ of protection to protect his debtor, that he should not be sued or attached until he paid the king's debt. But hereof grew some inconvenience, for to delay other men of their suits, the king's debts were the more slowly paid. And for remedie thereof it is enacted by the statute of 25 E. 3, that the other creditors may have their actions against the king's debtor, and proceed to judgment, but not to execution, unless he will take upon him to pay the king's debt, and then he shall have execution against the king's debtor for both the two debts." Coke upon L., p. 131 b (1). See, also, Bacon's Abrd., 91; *Giles v. Grover,* 11 Eng. Rul. Cases, 549.

Whether the doctrine of the king's right to be preferred in the payment of debts due him was abrogated when the common law was adopted as the basis of American jurisprudence, or whether the functions and powers exercised by him in this respect devolve upon the several states, is a question concerning which there is divergence of opinion. The existence of the right has been maintained by the courts of New York, Montana, Minnesota, Georgia, West Virginia, Maryland, and others, and with equal emphasis it has been denied in New Jersey, Michigan, South Carolina, Mississippi, and others. *Re Carnegie Trust Co.* (N. Y.), 46 L. R. A. (N. S.), 260; *Marshall v. People,* 244 U. S., 380, 65 Law Ed., 315; *Ætna Co. v. Miller* (Mont.), L. R. A., 1918 C, 954; *Fidelity and Guaranty Co. v. Rainey,* 120 Tenn., 357; *Freeholders v. State Bank,* 29 N. J. Eq. Rep., 268; *S. c.,* 30 N. J. Eq. Rep., 311; *S. v. Harris,* 16 S. C., 598; *S. v. Cleary,* 2 Hill (S. C.), 267, 600; *Com. of Banking v. Bank,* 161 Mich., 691, 705; *Potter v. F. and D. Co.,* 101 Miss., 823; Annotation to *S. v. Foster,* 29 L. R. A., 243.

The theory on which the prerogative is upheld is thus stated in the case of *Carnegie Trust Co., supra:* "The king, therefore, and the prerogatives that were personal to him, being repugnant to our Constitution, are abrogated. But his sovereignty, powers, functions, and duties, in so far as they pertain to civil government, now devolve upon the people of the State, and consequently are not in conflict with any of the provisions of our Constitution. Inasmuch, therefore, as the claims or moneys due the king for the support and maintenance of the government, whether derived from taxes or other sources of income, were preferred over the claims of others, it follows that, under the first subdivision of the provision of the Constitution of 1777, quoted, such preference became a part of the common law of our State, and is so continued under our present Constitution."

On the other hand, in *Central Trust Co. v. Third Ave. R. Co.*, 186 Fed., 291, the Circuit Court of Appeals of the Second Circuit, affirming an order of the Circuit Court of the United States for the Southern District of New York, said: "We regard it as settled law in this State that the State does not succeed as sovereign to all the prerogatives of the British crown, among others, the right to a preference for debts due it over all other creditors." This conclusion was approved by the Circuit Court of Appeals, Ninth Circuit, in *Brown v. Am. Bonding Co.*, 210 Fed., 844.

Courts denying the right say that it should not be sustained in our jurisprudence as an attribute of sovereignty; that it is in fact an attribute of a despotic government; that it is contrary to the spirit of our institutions; that it is antagonistic to the fundamental principles of a government established by the people for their protection and security; and that it involves questions which call for the exercise of legislative power as an expression of the sovereign will.

As the doctrine under consideration springs from the ancient prerogative of the sovereign of England to prefer debts due the crown, it becomes necessary to ascertain whether the doctrine as embedded in the English law is a part of the common law as adopted in North Carolina; for all matters relative to its adoption in this country were left to the several states for determination, each state adopting such part of the common law as was consonant with its use and customs. 5 R. C. L., 811; *Van Ness v. Pacard,* 2 Peters, 137, 7 Law. Ed., 374.

In 1715 a statute was enacted for the Province of Carolina, declaring, "That the laws of England are the laws of this Government, so far as they are compatible with our way of living and trade" (23 State Records, 38, 39); and on 22 December, 1776, a few days after the adoption of the Constitution at Halifax, it was ordained that such parts of the common law theretofore in use and not destructive of, repugnant to, or inconsistent with the freedom and independence of the State, not abrogated, repealed, expired, or become obsolete should continue in force. 23 State Records, 992. Substantially the same provisions were in the Act of 1778 (24 State Records, 162), and are now in section 970 of the Consolidated Statutes.

As the earlier statutes went into effect, it became apparent that portions of the common law were inconsistent with the government established under the Constitution, and several decisions to this effect were rendered by the Supreme Court. *Baker v. Long,* 2 N. C., 1; *Sherrod v. Davis, ibid.,* 283; *White v. Frost,* 10 N. C., 251; *Barfield v. Combs,* 15 N. C., 514. In *Ætna Co. v. Miller, supra, Hoke v. Henderson,* 14 N. C., 12, is cited as holding that sundry prerogatives ascribed to the king at common law had passed to the states; and in *Fidelity and Guaranty Co. v. Rainey, supra,* it is said that in *Hoke v. Henderson* the right

of the sovereign to priority of satisfaction out of the goods of the debtor is recognized. In *Hoke's case* the Court referred to "a string of cases cited to show that the execution of the king is entitled to the first satisfaction, unless the debtor's goods be actually sold under the subject's process, before the sovereign's is delivered." The question for decision, it was said, was different; and while the language may be construed as approving the general doctrine, it was not only *obiter,* but was followed by the declaration that "if the subject hath sold the goods of the king's debtor before the sovereign sues execution, the sale is not disturbed."

Our research has disclosed no case in which the prerogative has been applied by this Court as the controlling principle of decision under facts similar to those appearing in the record; and as suggested in *Freeholders v. State Bank, supra,* the fact that the right of preference has not been actually executed under such circumstances since the adoption of the Constitution of 1776 would seem to negative its existence in this State. Even if the right existed, there is strong reason for holding that upon appointment of the receivers the State lost its priority. *Natural Surety Co. v. Pixton,* 208 Pac., 878; *Ætna Co. v. Moore,* 181 Pac., 40; *State v. Bank,* L. R. A. (1918 A), 394; *Freeholders v. State Bank, supra.* For the reasons given, it is unnecessary to consider the latter of the two questions presented for review.

The judgment is

Affirmed.

STACY, C. J., took no part in the consideration or decision of this case.