## STATE BANK OF COMMERCE v. UNITED STATES FIDELITY & GUARANTY CO.

No. 3821.

Court of Civil Appeals of Texas. Texarkana.

May 6, 1930.

Rehearing Denied May 15, 1930.

John W. Goodwin, of Austin, for appellant.

Seay, Seay, Malone & Lipscomb, of Dallas, for appellee.

HODGES, J.

This case is submitted on an agreed statement of facts, of which the following is the substance: In January, 1928, the State Bank of Commerce was selected by the state treasurer as a state depository under the provisions of article 2526, Rev. Civ. Stat. 1925. On January 16, 1928, the bank qualified as such depository by executing a bond in the sum of $21,000 with the United States Fidelity & Guaranty Company as its surety. The bond was conditioned, as required by law, for the payment of all funds and money that might be deposited by the state treasurer with the bank. In December, 1928, the bank became insolvent, and its affairs were placed in the hands of the banking commissioner for liquidation. At the time of the bank's failure the state had on deposit in the bank the sum of $10,500. In addition to that amount, the bank owed the state the sum of $32.20 as accrued interest. A claim was presented to the banking commissioner by the treasurer in behalf of the state, which was allowed as an unpreferred debt, but was not paid out of the

assets of the bank. Later a demand for payment was made by the treasurer on the United States Fidelity & Guaranty Company as surety on the bank's bond. In July, 1929, the United States Fidelity & Guaranty Company paid over to the treasurer the sum of $10,-753.13 in full of the amount due the state from the bank, including the accrued interest on the state's deposits. At the time of this payment the United States Fidelity & Guaranty Company took from the treasurer a written assignment of whatever right the state might have against the bank and against the banking department as holder of the bank's assets.

In due time the United States Fidelity & Guaranty Company presented a claim to the banking department for reimbursement out of the assets of the bank. That claim was approved only as a general debt against the assets of the bank. This suit was then filed by the United States Fidelity & Guaranty Company against the bank and the banking commissioner for the purpose of establishing that debt as a preferred claim against the assets of the insolvent bank. The trial resulted in a judgment in favor of the United States Fidelity & Guaranty Company, establishing its debt as a preferred claim. The bank and the banking commissioner have appealed.

The judgment allowing the claim as a preferred debt is based upon two legal propositions: One is that, at the time the bank failed, the state, as the sovereign, was entitled to a preference over other creditors of the bank; the other is that by paying the debt as a surety for the bank the United States Fidelity & Guaranty Company became subrogated to the state's status as a preferred creditor.

It is conceded by counsel that there is in Texas no statute expressly conferring upon the state the right of priority in the distribution of the assets of an insolvent bank; that whatever right the state may have grows out of the adoption of the common law of England. In 1840 the Legislature of Texas enacted the following statute:

"The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature." Article 1, Rev. Civ. Statutes 1925.

In the case of Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S. W. 740, 741, 69 L. R. A. 986, 8 Ann. Cas. 1117, Chief Justice Gaines, of our Supreme Court, said:

"Since the passage of that act [act of 1840], which has ever since remained the law, and is now incorporated in our Revised Statutes as article 3258, probably few cases have been decided in this court in which the rules of the common law have not been expressly or impliedly applied in the determination of one or more of the questions involved. * * * At all events, since the adoption of the common law the courts of this state have adhered to the decisions of the English courts with as much strictness as the courts of the other states who have the common law, not by adoption, but by inheritance, so to speak."

One of the prerogatives belonging to the English crown was the right of the sovereign to demand the payment of his debt from the estate of an insolvent debtor before the claims of other creditors should be paid. It is admittedly true that there are some prerogatives of royalty recognized by the English common law which are repugnant to our system of government and not in harmony with the provisions of our Constitution. Whether or not this right of priority in the payment of debts is one of those offensive features of the common law has never been decided by any of the appellate courts in this state. It has, however, been before the courts of other states in a number of cases. But the conclusions announced in those cases have not been harmonious. The states of Georgia, Iowa, Missouri, Montana, New York, Oregon, Pennsylvania, Tennessee, Utah, and West Virginia have held that the adoption of the common law invests the state with this right of priority in the collection of its debts from insolvent debtors. See the following cases: Central Bank & Trust Corp. v. State, 139 Ga. 54, 76 S. E. 587; In re Receivership of Marathon Savings Bank, 198 Iowa, 696, 196 N. W. 729, 200 N. W. 199; Maryland Casualty Co. v. McConnell, 148 Tenn. 656, 257 S. W. 410; Woodyard v. Sayre, 90 W. Va. 295, 110 S. E. 689, 24 A. L. R. 1497; American Surety Co. v. Pearson, 146 Minn. 342, 178 N. W. 817; United States Fid. & Guar. Co. v. Rathbun, 160 Minn. 176, 199 N. W. 561; Fidelity & Deposit Co. v. State Bank, 117 Or. 1, 242 P. 823; Ætna Accident & Liability Co. v. Miller, 54 Mont. 377, 170 P. 760, L. R. A. 1918C, 954; United States Fid. & Guar. Co. v. Rainey, 120 Tenn. 357, 113 S. W. 397; People v. Farmers' State Bank, 335 Ill. 617, 167 N. E. 804. To these may be added numerous other cases collated in notes to North Carolina Corporation Comm. v. Citizens' Bank & Trust Co., in 51 A. L. R. 1350. The states of Arkansas, New Jersey, North Carolina, South Carolina, Mississippi, and Michigan have held to the contrary. Maryland Casualty Co. v. Rainwater, 173 Ark. 103, 291 S. W. 1003, 51 A. L. R. 1332; Board of Chosen Freeholders of Middlesex County v. State Bank, 29 N. J. Eq. 268; Id., 30 N. J. Eq. 311; North Carolina Corporation Comm. v. Citizens' Bank & Trust Co., 193 N. C. 513, 137 S. E. 587, 51 A. L. R. 1350, and cases therein cited; Baxter v. Baxter, 23 S. C. 114; Potter v. Fidelity & Deposit Co., 101 Miss. 823, 58 So. 713; Commissioner of Banking v. Chelsea Sav. Bank, 161 Mich. 691, 125 N. W. 424, 127 N. W. 351.

The principle which controls the rule adopted by the majority of the courts passing upon that question is thus stated by the Supreme Court of Montana in Ætna Accident & Liability Co. v. Miller, 54 Mont. 377, 170 P. 760, L. R. A. 1918C, 954, cited in 51 A. L. R. page 1359.

"Whether the state was entitled to a preference over all the unsecured general creditors of the insolvent bank cannot be determined by resort to any express statute or constitutional provision, for confessedly none such exist; hence the question is one to be resolved according to the common law. * * * Just what is meant by the 'common law' in this connection, however, is a matter open to definition. Broadly speaking, it means, of course, the common law of England; but it means that body of jurisprudence as applied and modified by the courts of this country up to the time it became a rule of decision in this commonwealth. * * * The distinction is noted here because the common law as administered in England without a doubt commands the recognition of the sovereign as entitled to the preference * * * whereas the respondent insists that the common law as recognized and applied in the United States is otherwise. At the time the territory of Montana was organized and first formally adopted the common law as our rule of decision in the absence of statute, * * * there existed a vast number of decided cases from almost all of the states holding that divers and sundry prerogatives ascribed to the king at common law had passed to the states; those only being denied which had attached to the king in his personal character rather than as parens patriæ or personification of the sovereignty."

And, after reviewing the cases both for and against the right of the state at common law to a preference, the court continued as follows:

"Those opposed to the preference seem so overwhelmed by the term 'prerogative' that they lose sight of the reality for which it stands and which is inseparable from sovereignty in any form. The prevailing view, and the view that has always held the weight of authority, is emphatically in favor of the preference, and the philosophy of it is sententiously expressed by the Supreme Court of the United States thus: 'The right to priority of payment of debts due to the government is a prerogative of the crown well known to the common law. It is founded, not so much upon any personal advantage to the sovereign, as upon motives of public policy, in order to secure an adequate revenue to sustain the public burdens, and discharge the public debts.' "

In North Carolina Corporation Comm. v. Citizens' Bank & Trust Co., 193 N. C. 513, 137 S. E. 587, 589, 51 A. L. R. 1350, the North Carolina Supreme Court thus states the principle upon which the minority view is based:

"Courts denying the right [of priority] say that it should not be sustained in our jurisprudence as an attribute of sovereignty; that it is in fact an attribute of a despotic government; that it is contrary to the spirit of our institutions; that it is antagonistic to the fundamental principles of a government established by the people for their protection and security; and that it involves questions which call for the exercise of legislative power as an expression of the sovereign will."

That this right of priority in the sovereign in the collection of debts was an essential part of the common law of England in 1840 is conceded by all the courts. It follows, then, that this provision of the common law must have been carried into, and become a part of, the law of this state, unless that feature is inconsistent with our Constitution or is contrary to some other statutory enactment now in force.

That the power to claim and exercise this right of priority of the state over the individual citizen is inherent in the state cannot be doubted. Marshall v. New York, 254 U. S. 380, 41 S. Ct. 143, 65 L. Ed. 315; Preston v. Anderson County Levee Imp. Dist. (Tex. Civ. App.) 261 S. W. 1077. In the last case referred to a writ of error was refused by the Supreme Court.

There is nothing in our Constitution which either expressly or by implication forbids the enactment of a statute specifically conferring upon the state the same prerogative in the collection of its debts as that enjoyed under the common law by the King of England. If that may be done by an express statutory enactment, it is illogical to say that such a preference right is a prerogative so peculiar to a monarchical system of government as to be inconsistent with our republican institutions. What the legislative branch of the government may do without violating either the letter or the spirit of our Constitution cannot be foreign to our form of government. If the power to confer that preference right is lodged in the Legislature, there would seem to be no good reason for saying that this power was not exercised when all of the common law of England not inconsistent with our Constitution and existing statutes was adopted.

The policy of allowing the state a preference right in the collection of its debts due from the estate of an insolvent debtor is based upon a sound principle of government. Its exercise is for the public good, not for the benefit of some individual or group of individuals. The loss of the state's revenue, either by defalcation of a custodian of public funds or by the failure of taxpayers to pay their just share of the taxes, tends to increase the burden of taxation upon others or to impair the efficiency of government in the accomplishment of the ends for which it was organized. We have therefore concluded to follow the rule prevailing in a majority of

the states and hold that in adopting the common law the Legislature conferred upon the state this prior right in the collection of its debts. We think that rule is not only supported by the weight of authority, but by better reasoning.

■ In this instance the state took additional security in the form of the bond executed by the appellee. The question then is, Should the taking of that additional security be construed as a waiver by the state of its preference right against the assets of the insolvent bank? Some courts have held that the taking of such additional security does operate as a waiver of this common-law prerogative as a matter of law. National Security Co. v. Pixton, 60 Utah, 289, 208 P. 878, 24 A. L. R. 1487; In re Central Bank, 23 Ariz. 574, 205 P. 915; United States Fid. & Guar. Co. v. Elliott, 34 Wyo. 134, 241 P. 1063, 42 A. L. R. 1290; In re Holland Banking Co. (Mo. Sup.) 281 S. W. 701. There are a number of other courts which hold to the contrary. Booth v. State, 131 Ga. 750, 63 S. E. 502; Fidelity & Deposit Co. v. McClintock, 68 Mont. 342, 218 P. 652; Maryland Casualty Co. v. McConnell, 148 Tenn. 656, 257 S. W. 410; United States Fid. & Guar. Co. v. Central Trust Co., 95 W. Va. 458, 121 S. E. 430; United States Fid. & Guar. Co. v. Bramwell, 108 Or. 261, 217 P. 332, 32 A. L. R. 829; City of Centralia v. U. S. Nat. Bank (D. C.) 221 F. 755; Powell v. Board of Supervisors, 107 Miss. 410, 65 So. 499, Ann. Cas. 1916B, 1262; American Bonding Co. v. Reynolds (D. C.) 203 P. 356; In re Carnegie Trust Co., 151 App. Div. 606, 136 N. Y. S. 466; Id., 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260. The statute which provides for depositing the state's funds in banks distributed over different parts of the state was not passed as a mere money lending scheme for profit to the state, but for the purpose of increasing the security of the state's money. Doubtless it was also intended to serve still another public purpose—to prevent any disturbance in the channels of commerce by the withdrawal and retirement of so large a volume of the currency of the country during the taxpaying season. A bank that receives such a deposit is not, in the usual sense of the term, a borrower from the state, but more of a custodian of public funds. It is true that, when a deposit is made, the title to the money passes to the bank, and the relation of debtor and creditor arises between the bank and the state. But the obligation of the bank to the state is different from that created by an ordinary commercial loan. The transaction is what is known in banking parlance as a "deposit" subject to withdrawal at any time. The interest contracted for is a mere incident to the principal purpose for which the deposit is made. Maryland Casualty Co. v. McConnell, supra. A sound public policy requires that the state should take special security from every one who collects or handles public funds. That rule seems to be an old one in this state, and is applied in all cases without any exception. For the reasons stated, as well as upon the authorities cited, we do not think it should be said that the taking of additional security in this instance operated as a matter of law to waive the state's preference right against the assets of the insolvent bank.

■ We pass, then, to the consideration of still another question: Did the state lose its preference right when the assets of the bank passed into the hands of the banking commissioner? Here again we are met with a diversity of holdings by the courts of the different states. In some of the jurisdictions it is held that this preference right must be exercised before the property passes from the hands of the original debtor—that when the assets subject to the claim are sold or mortgaged to other creditors or pass into the hands of an assignee or receiver the state's preference right ceases. Ætna Cas. & Surety Co. v. Moore, 107 Wash. 99, 181 P. 40, 41; Board of Chosen Freeholders of Middlesex County v. State Bank, 29 N. J. Eq. 268; State v. Foster, 5 Wyo. 199, 38 P. 926, 29 L. R. A. 226, 63 Am. St. Rep. 47; Commissioner of Banking v. Chelsea Savings Bank, 161 Mich. 691, 125 N. W. 424, 127 N. W. 351. The reasons for the rule are thus stated in the following quotations from the case first above cited:

"My judgment is, the state does not possess the prerogative claimed. But if my examination of the question had led me to a different conclusion, still, I think, the claim could not be sustained. The authorities of both countries unanimously agreed that the right dies the moment the debtor's title is divested. No claim was made by the state in this case until after a receiver had been appointed. That appointment invested him with full power to sell, assign, and convey all the property of the corporation. * * * No act by the corporation is necessary to complete either the title of the receiver or that of his purchaser. Unlike proceedings under bankrupt laws, no assignment by the debtor or commissioners is required. Title is divested by force of law, and such divestiture is perfect and absolute."

While all the courts agree that the state loses this preference right when the title to the assets of the insolvent debtor passes to third parties or when such assets are mortgaged to secure other debts, quite a number of them hold that this right is not lost by the mere passing of the assets of the bank into the hands of a receiver in chancery or a commissioner of banking. Marshall v. State of N. Y., 254 U. S. 380, 41 S. Ct. 143, 145, 65 L. Ed. 315; Maryland Casualty Co. v. McConnell, 148 Tenn. 656, 257 S. W. 410, 412; United States Fid. & Guar. Co. v. Central Trust Co., 95 W. Va. 458, 121 S. E. 430, 431;

Denver v. Stenger (C. C. A.) 295 F. 809; Fidelity & Deposit Co. v. McClintock, 68 Mont. 342, 218 P. 652. In the case first above referred to Justice Brandeis, in rendering the opinion, said:

"Whether the priority enjoyed by the state of New York is a prerogative right or merely a rule of administration is a matter of local law. Being such, the decisions of the highest court of the state as to the existence of the right and its incidents will be accepted by this court as conclusive (citing cases). The priority of the state extends to all property of the debtor within its borders, whether the debtor be a resident or nonresident and whether the property be in his possession or in custodia legis. The priority is therefore enforceable against the property in the hands of a receiver appointed by a federal court within the state (citing a number of cases). For a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state. * * * The state's right to be paid out of the assets prior to other creditors does not, as pointed out in Re Tyler [149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689], supra, * * * arise from an express lien on the assets existing at the time they passed into the receiver's hands. * * * The right of priority has been likened to an equitable lien. State [use of Phillips] v. Rowse [49 Mo. 586], supra. The analogous preference in payment given to claims for labor by state statutes, and to which the Bankruptcy Act [11 USCA] gives priority, have been described as being 'tantamount' to a lien."

In the case of United States Fidelity & Guaranty Co. v. Central Trust Co., supra, the court said:

"Does the passing of the possession of the insolvent's property to the receiver divest the insolvent of title? Some authorities so hold. Some of the cases cited by defendant's counsel are where there were voluntary assignments; in some the statute transfers title to the receiver. But whether there is any difference between an assignment of the property for the benefit of creditors and the passing of such property into possession of the receiver by operation of law, we need not say, for our own cases hold that a receiver is an officer of the court that appoints him, and that the property of which he has charge is in custodia legis; and that his possession is the possession of the court. Bank v. Bryan, 76 W. Va. 481, 86 S. E. 8, L. R. A. 1915F, 1219; Bowling v. Ins. Co., 86 W. Va. 164, 103 S. E. 285, 17 A. L. R. 376. * * * Nor does the appointment of a receiver affect the rights or priorities of creditors."

In the case of Maryland Casualty Co. v. McConnell, supra, the assets of a bank had been by resolution of the directors placed in the hands of the state banking department. In discussing the question as to whether that operated to destroy the state's preference right, the court said:

"It is said that the rule declared in 2 Tidd's Practice, 1098, 'when goods are bona fide sold, or fairly assigned by the King's debtor to the trustee for the benefit of his creditors, before the teste of the extent they cannot be taken under it,' defeats the complainant's recovery herein. It is insisted that proceeding under chapter 20 of the Acts of 1913, the directors of the bank by resolution turned the assets over to the superintendent of banks, and that such action was equivalent to an assignment by the bank for the benefit of its creditors. A mere resolution of the directors of the bank was, of course, not equivalent to a formal assignment. Such a resolution would only be authority for such an assignment. The resolution would not transfer title. No assignment was made."

After some further discussion, the court reached the conclusion that the state's preference right was not lost by the passage of the assets into the hands of the superintendent of banks.

Under our statute, the banking commissioner is an administrative agent who operates under the direction of the court having jurisdiction over the assets of the insolvent bank. Assets in his hands are regarded as in custodia legis. The property of the bank cannot be sold except by an order of the proper court. Kidder v. Hall, 113 Tex. 49, 251 S. W. 497; Chapman v. Clark (Tex. Com. App.) 276 S. W. 197; Chapman v. Guaranty State Bank (Tex. Com. App.) 267 S. W. 690.

We are of the opinion that the judgment of the court should be affirmed, and it is accordingly so ordered.